No. 56,354

UNIFIED SCHOOL DISTRICT No. 503, *Appellee,* v. DON McKINNEY
and MARILYN TAYLOR, *Appellants.*

(689 P.2d 860)

Opinion filed October 26, 1984.

*Dan L. Wulz,* of Schroer, Rice, Bryan & Lykins, P.A., of Topeka, argued the cause and was on the briefs for appellants.

*John B. Markham,* of Parsons, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The defendants seek to have a restraining order, temporary injunction, and resulting injunction declared unconstitutional.

On May 23, 1980, Don McKinney, Marilyn Taylor, and Steve

Stocker went to the offices of U.S.D. No. 503 (District) to file a grievance which they presented to the secretary, Kathy Hardman. Present in the office at the time were two applicants for teaching positions. As McKinney, Taylor (a teacher employed by the District and the wife of McKinney), and Stocker were leaving the office, McKinney stated, "Don't work here. It's terrible." It is unclear whether McKinney was saying this to the applicants or to his cohorts.

On June 8, 1980, Stocker distributed a news release to the news media. The news release stated:

"On Monday night, June 9th, [at 6:45] the Citizens for a Healthy Environment in the School System will hold a press conference at the District office of USD 503, 2900 Southern Boulevard, Parsons, Kansas. This conference will precede the regular meeting of the board of education held at that site at 7:00. Several citizens wish to make statements and express opinions concerning the turmoil in Parsons schools, including the state investigation now being conducted, as well as the Marilyn Taylor and Duane Callahan cases, and other problems in the schools. School superintendent Salvatore Alioto will be present on the site, as well as Lincoln school principal Calvin Dill, although it is not known if they will concede to make statements on tape or camera."

School Superintendent S. J. Alioto did not know of the press conference until the news director of a Pittsburg radio station questioned him about it. Calvin Dill, principal of Lincoln Elementary School, learned of the press conference from a news broadcast over the Pittsburg radio station around 7:30 a.m., June 9, 1980. At 3:55 p.m. on June 9, 1980, the school district filed a petition seeking an order restraining the defendants from coming upon the premises of the superintendent's office in Parsons, Kansas; from making derogatory statements to applicant teachers who were being interviewed for employment with the school district; and for an injunction to restrain defendants from such acts; and in addition, to restrain the defendants from acts of harassment toward Dr. Alioto and Principal Calvin Dill.

The restraining order was issued by the district judge at 4:00 p.m., June 9, 1980. It stated:

"IT IS THEREFORE ORDERED that defendants, Don McKinney, Marilyn Taylor and Steve Stocker be and they are hereby restrained from coming upon the premises at 2900 Southern Boulevard, Parsons, Kansas, and from making derogatory remarks concerning said school district in the presence of certified applicant teachers who are applying for positions with plaintiff for the school year 1980-1981, and from calling unplanned press conferences at any building of plaintiff and from harassing Dr. Alioto and Mr. Dill at any time or place."

McKinney, Taylor and Stocker met with the news media at 6:45 p.m., June 9, 1980, in the parking lot of the district office. The restraining order was served on the defendants prior to the meeting in the parking lot. Because of the restraining order, the defendants did not discuss their concerns about the school system with the media.

The Board of Education had a regular meeting scheduled for 7:00 p.m. that night at its offices. The defendants entered the Board meeting, followed by a television cameraman who had been present to film the public meeting called by the defendants. No statement was made by any of the defendants while present at the Board meeting. A sheriff's deputy and several police officers removed the defendants from the Board meeting after it had begun.

On June 12, 1980, the district court held a hearing on the District's motion for a temporary injunction. The court ordered a temporary injunction against defendants and required the District to post a $1,000.00 bond. The injunction stated that:

"(A) Defendants are enjoined from holding a press conference or any public meeting on any property of plaintiff, including the school buildings, and the parking lot, and the Superintendent's office at 2900 Southern Boulevard, Parsons, Kansas.

"(B) Defendants are enjoined from disrupting or interfering with any meeting of plaintiff's Board of Education or any activities or work assignments of the school administrators of said school district.

"(C) The court retains jurisdiction of this matter until a future date can be determined as to whether a permanent injunction should be issued in this case."

Defendants did not appeal the June 12, 1980, temporary injunction.

On November 16, 1983, three years and five months after the issuance of the temporary injunction, the district court held a hearing on the defendants' motion to reconsider and set aside the temporary injunction of June 12, 1980. The court ordered the temporary injunction be made permanent, and denied any increase in bond for the plaintiff.

On November 29, 1983, McKinney and Taylor filed their notice of appeal from the granting of the temporary restraining order of June 9, 1980, the temporary injunction of June 12, 1980, and the injunction of November 16, 1983.

Injunction is an equitable remedy and its grant or denial in each case is governed by the principles of equity. The granting

or denial of an injunction is discretionary. Absent an abuse of discretion, the appellate court does not normally interfere. To warrant injunctive relief it must clearly appear that some act has been done, or is threatened, which will produce irreparable injury to the party seeking such relief. The burden of proof in an injunction action is upon the petitioner to sustain the allegations of its petition. *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 523 P.2d 755 (1974).

The Code of Civil Procedure, Chapter 60, Article 9, provides for the issuance by a court of an injunction order to do or refrain from doing a particular act. The order may be a final judgment in an action, or it may be allowed as a provisional remedy. K.S.A. 60-901.

K.S.A. 60-903 provides for the issuance of a restraining order as a provisional remedy to a party entitled to relief, restraining the commission or continuance of some act. The purpose of such order is to restrain a defendant for a very brief period, pending a hearing on the application for a temporary injunction. The restraining order can go no further than to preserve the status quo until the hearing is held for the temporary injunction, the status quo being the last actual, peaceable, noncontested position of the parties which preceded the pending controversy. Where it appears to the judge that a restraining order will not result in damage to the party restrained, no bond is required of the movant. A restraining order is the application for a temporary injunction and remains in force until the hearing for the temporary injunction.

The issuance of a restraining order is a matter for the sound discretion of the court. It is ordinarily done ex parte, without notice to the party affected, and for this reason should be reluctantly granted. In view of the drastic consequences of a restraining order, the party to be restrained should be heard, when feasible, before the order is granted.

Despite the general undesirability of ex parte restraining orders, they are not invariably barred by the First Amendment. However, unless there is a clear showing that it is impossible to serve or to notify the opposing party, no order restraining the basic freedoms guaranteed by the First Amendment should issue. Restrictions on free speech are valid only where necessary

to protect compelling public interests and where no less restrictive alternatives are available.

A temporary injunction cannot be granted until after reasonable notice and an opportunity to be heard are provided to the party to be enjoined. The purpose of the temporary injunction is to preserve the status quo until the court finally determines whether or not the request for the injunction should be granted. The temporary injunction operates as a binding restraint upon the party until rescinded by further action of the court.

McKinney and Taylor filed their motion to reconsider or set aside the June 12, 1980, temporary injunction on July 27, 1983. On November 29, 1983, they filed their appeal of the district court's granting the June 9, 1980, ex parte restraining order; the June 12, 1980, temporary injunction; and the November 16, 1983, injunction. The restraining order and temporary injunction had been in force, restraining the defendants, for approximately 40 months. The delay occurred because of a pending civil rights action between the same parties filed in the United States District Court in Topeka.

The District claims that this court has no jurisdiction to consider an appeal of a restraining order issued pursuant to K.S.A. 60-903. The right to an appeal in this state is neither a vested nor a constitutional right. The right to an appeal is statutory and, in the absence of a statute which authorizes an appeal, an appeal is not available to the losing party. *State v. Freeman,* 234 Kan. 278, 670 P.2d 1365 (1983).

In most jurisdictions an order granting an application for a restraining order prior to the issuance of a temporary injunction is not appealable. K.S.A. 60-2102 provides for an appeal as of right as to injunctions and when provisional remedies are discharged, vacated or modified. K.S.A. 60-2102 does not provide for an appeal when a restraining order is granted. The legislature did not provide an appeal in such circumstances because restraining orders are usually in effect for only a brief period, usually less than the time required for an appeal prior to the hearing for the temporary injunction. At the hearing for the temporary injunction, the party restrained has a statutory right to appear and contest the application.

The defendants claim the issuance of the restraining order and the temporary injunction violated their constitutional right of

free speech. They also claim the restraining order violated express mandatory provisions of K.S.A. 60-902 in that the petition seeking the order was not verified as required by the statute. They also claim it violated provisions of K.S.A. 60-906 in that the restraining order did not set forth the reasons for its issuance. Plaintiff denies all these allegations, but nowhere does either party consider whether the issues surrounding the restraining order and the temporary injunction are moot.

The rule that this court will not on appellate review decide a moot question in a situation where it cannot make its judgment effective has been applied not only in cases pertaining to private controversies but to those actually involving the public interest. *Andeel v. Woods*, 174 Kan. 556, 258 P.2d 285 (1953). When it clearly appears by reason of changed circumstances that any judgment this court renders would be unavailing as to the particular issue litigated, this court ordinarily will not consider and decide the mooted issue, whether one of law or fact.

When an injunction is issued following the issuance of a restraining order or a temporary injunction, most courts, including Kansas, hold that issues surrounding the temporary orders are no longer appealable. There is no purpose in considering the temporary orders where an injunction is granted by a court settling all issues between the parties and the issues are merged in the injunction.

In *Hall v. Eells*, 155 Kan. 307, 124 P.2d 444 (1942), the plaintiff sought and the court granted a restraining order restraining the defendant from interfering with the plaintiff's possession of certain land. Fifteen days later, after hearing evidence presented by both the plaintiff and the defendant, the court issued an injunction enjoining the defendant from interfering with the possession of plaintiff. The defendant moved to have the restraining order set aside, and when the trial court overruled the motion, the defendant appealed. This court determined:

"The permanent injunction settled all the issues in the case in favor of the plaintiff. No appeal was taken from this order and it became final. This permanent injunction was issued after a hearing and examination of evidence of both parties by the trial court. It does not appear that the granting of the restraining order had the slightest influence upon the issues that were finally settled as to the permanent injunction. The permanent injunction settled all the questions in the case against the defendant as far as the issues made up by the pleadings were concerned. See *Leavenworth v. Water Co.*, 69 Kan. 82, 76 Pac. 451, where this court said:

" 'Plaintiff in error contends that the preliminary injunction was improvidently granted and should have been vacated. The final judgment was in no way dependent upon, or influenced by, the rulings relating to the preliminary injunction, and since the decree for a perpetual injunction is approved by this court there is no purpose in considering the regularity of the temporary order.' (p. 91.)

"See, also, *Mead v. Anderson,* 40 Kan. 203, 19 Pac. 708, where this court said:

" 'It has often been held by this court that the refusing or granting of a temporary injunction is largely in the discretion of the judge or court, and for that reason close and intricate questions will not be reviewed and the action of the court or judge reversed, unless it shall clearly appear that the judgment or order is erroneous.' (p. 204.)" 155 Kan. at 309.

For other cases see: *Valentine v. Valentine,* 31 Wash. 2d 650, 198 P.2d 494 (1948); *State ex rel. Carroll v. Simmons,* 61 Wash. 2d 146, 377 P.2d 421 (1962), *cert. denied* 374 U.S. 808 (1963); *State ex rel. Douglas v. Ledwith,* 204 Neb. 6, 281 N.W.2d 729 (1979); and *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir. 1980).

The issues surrounding the regularity of a restraining order or a temporary injunction become moot upon the subsequent granting of the injunction. On appeal from the granting of an injunction, the granting of an interlocutory order in relation to the injunction is not subject to review. When an injunction is granted, the temporary injunction is merged into or dissolved by the injunction without the requirement of a formal order of dissolution, and thereby the question of propriety of the order concerning the temporary injunction is entirely academic; the question is moot and will not be considered by this court on appeal.

Defendants question the constitutionality of K.S.A. 60-903, because the statutory provision says that a restraining order may issue without notice or bond.

Long-standing and well-established rules are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the duty of the court to uphold the statute under attack, whenever possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally sound, that should be done. *State, ex rel., v. Fadely,* 180 Kan. 652, 658-59, 308 P.2d 537 (1957); *Wall v. Harrison,* 201 Kan. 600, 603, 443 P.2d 266 (1968); *Moore v. Shanahan,* 207 Kan. 645, 651, 486 P.2d 506 (1971); 16 Am. Jur.

2d, Constitutional Law § 254, pp. 719-73. See *Leek v. Theis*, 217 Kan. 784, 792-93, 539 P.2d 304 (1975).

In *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 596 P.2d 446 (1979), this court was required to determine whether a statute apparently valid upon its face may be unconstitutional and invalid as to a specific set of facts, circumstances or classifications. In *Flax*, the plaintiff filed an action against the Kansas Turnpike Authority (KTA) for the wrongful death of her husband and three children as a result of a one-car collision on the Kansas Turnpike. The KTA claimed that K.S.A. 46-901 (Weeks) granted it immunity from suit. The plaintiff claimed that application of K.S.A. 46-901 (Weeks) to highway defects upon the turnpike created an unconstitutional classification violative of the equal protection clauses of the federal and state constitutions. The court noted it is well settled that a statute may be constitutional as applied to one set of facts and unconstitutional as applied to another. *Dahnke-Walker Co. v. Bondurant*, 257 U.S. 282, 66 L.Ed. 239, 42 S.Ct. 106 (1921); *Kansas City Ry. v. Anderson*, 233 U.S. 325, 58 L.Ed. 983, 34 S.Ct. 599 (1914); *Mintz v. Baldwin*, 2 F. Supp. 700, 705 (N.D.N.Y. 1933).

After finding an unconstitutional classification in *Flax*, the court stated:

"In *State v. Smiley*, 65 Kan. 240, 69 Pac. 199 (1902), *aff'd* 196 U.S. 447, 49 L.Ed. 546, 25 S.Ct. 289 (1905), this court recognized the proposition that general language, valid upon its face, may be construed to exclude certain subjects or classes of things in order that the entire statute will not be held unconstitutional:

" 'Throughout the entire history of English and American law the courts have been ruling that the general words of statutes were to be restrained in import and application whenever the taking of them in literal sense would lead to absurd or hurtful consequences, and the same is true under the American system of written constitutions, whenever the taking of general words in their full signification would expose them to conflict with the organic law.' p. 249." *Flax*, 226 Kan. at 9.

The *Flax* court had no hesitancy in finding that a statute, apparently valid upon its face, may be unconstitutional as to a particular set of facts, circumstances or classifications. In this case, 60-903 also falls within this category.

In *Carroll v. Princess Anne*, 393 U.S. 175, 21 L.Ed.2d 325, 89 S.Ct. 347 (1968), the petitioners were a white supremacist organization who had held one outdoor rally and had scheduled a second one for the following night. Town and county officials obtained a restraining order in ex parte proceedings with no

notice being given to the group and no effort being made to communicate with them. The order restrained the petitioners for 10 days from holding rallies in the county, and as a result of the temporary restraining order, the organization cancelled the scheduled rally. Ten days later, after a trial, the circuit court issued an injunction extending the earlier injunction for 10 months. The Supreme Court stated:

"The 10-day order here must be set aside because of a basic infirmity in the procedure by which it was obtained. It was issued *ex parte*, without notice to petitioners and without any effort, however informal, to invite or permit their participation in the proceedings. There is a place in our jurisprudence for *ex parte* issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate." 393 U.S. at 180.

While the *Carroll* case holds that ex parte restraining orders should be avoided where First Amendment rights are involved, it has not been read to totally ban ex parte orders:

"Despite the general undesirability of ex parte orders, they should not be invariably barred by the first amendment. The boundaries of any such rule would be unclear, particularly where speech is mixed with conduct, as in picketing and demonstrations. More importantly, such a rule could result in the sacrifice of important public interests. For example, an ex parte order might be indispensable to protect substantial public interests against a sudden, large-scale demonstration. *Carroll* should be read, therefore, as authorizing the issuance of brief ex parte restraining orders where there is a compelling justification for doing so, where it is not reasonably possible to have a prior adversary hearing, and where speedy methods are available to dissolve any erroneous order. This is consistent with generally accepted principles governing first amendment limitations: restrictions on free speech are valid where necessary to vindicate compelling governmental interests and where no less restrictive alternatives are available.

"Since ex parte orders can have a drastic impact on first amendment interests, the limitations suggested above must be satisfied. The state ought to carry the burden of proof that an ex parte order is necessary, and unless the record affirmatively showed that the burden had been met any contempt finding should be invalidated. There is no justification, however, for permitting the parties to ignore an injunction simply because it is erroneous, whether or not they have unsuccessfully attempted to seek its dissolution. The first amendment cannot sensibly be read to require the impossible; some margin for good faith error is acceptable so long as reasonably adequate procedures are available to evaluate first amendment claims." Monaghan, *First Amendment "Due Process,"* 83 Harv. L. Rev. 518, 537-38 (1970).

The Supreme Court and the various circuits have required that notice be given to affected persons before a court may enter an order denying such persons their First Amendment rights. Only in extreme circumstances or emergency can such orders be entered ex parte. In this case, there is no evidence of emergency or extreme circumstances to show that the plaintiff was prevented from notifying defendants that plaintiff was seeking a restraining order. Defendant Taylor was an employee of the district, and the district should have had sufficient information available to know where to contact her. Notice should have been given. It was not. K.S.A. 60-903 is constitutional but, under the facts of this case, it was applied in an unconstitutional manner. There was no showing by the plaintiff that extreme circumstances or emergency existed to warrant the issue of the ex parte restraining order.

The injunction enjoins defendants from holding a press conference or any public meeting on any property of the school district. It also enjoins the defendants from disrupting or interfering with any meeting of the school district's board of education or any work activities or work assignments of the school administrators. The defendants claim the injunction generally violates their right of free speech, is unconstitutionally vague, unconstitutionally broad and an unconstitutional prior restraint. The plaintiffs deny all this.

Statutes which authorize restraining orders, temporary injunctions and permanent injunctions are a legislatively created system that permits suppression of speech in advance of actual expression and may be deemed a prior restraint. Prior restraints are not unconstitutional per se. Any system of prior restraint, however, comes to a court bearing a heavy presumption against its constitutional validity. The presumption against prior restraint is heavier — and the degree of protection is broader — than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of free-wheeling censorship are formidable. See generally *South-*

*eastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 43 L.Ed.2d 448, 95 S.Ct. 1239 (1975).

Freedom of speech and of the press are secured against abridgment by the federal and state Constitutions. They are among the most fundamental personal rights and liberties of the people. *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964). These constitutional provisions do not confer an absolute right to speak or publish. There is always a responsibility for whatever one may choose to communicate. *Branzburg v. Hayes,* 408 U.S. 665, 683, 33 L.Ed.2d 626, 92 S.Ct. 2646 (1972). These provisions in our Constitutions have never prevented punishment of those individuals who abuse the freedoms guaranteed thereunder. *Stromberg v. California,* 283 U.S. 359, 369, 75 L.Ed. 1117, 51 S.Ct. 532 (1931). See *State v. Russell,* 227 Kan. 897, 900, 610 P.2d 1122, *cert. denied* 449 U.S. 983 (1980).

Certain fundamental principles guide the allowable restraint for government regulation of speech. The First Amendment guarantee of freedom of speech forbids the states to punish use of the written or spoken word except in certain "narrowly limited classes of speech." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571, 86 L.Ed. 1031, 62 S.Ct. 766 (1942). Because First Amendment rights need breathing space to survive, government is limited to regulation in the area only with narrow specificity. *N.A.A.C.P. v. Button,* 371 U.S. 415, 433, 9 L.Ed.2d 405, 83 S.Ct. 328 (1963). Limited categories of written or spoken words which are not protected by the First Amendment include: Fighting words — *Chaplinsky v. New Hampshire,* 315 U.S. 568; obscenity — *Miller v. California,* 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607 (1973), and *Roth v. United States,* 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957); libel — *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974), and *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L.Ed.2d 686, 82 S.Ct. 710 (1964); and incitement — *Brandenburg v. Ohio,* 395 U.S. 444, 23 L.Ed.2d 430, 89 S.Ct. 1827 (1969), and *Feiner v. New York,* 340 U.S. 315, 95 L.Ed. 295, 71 S.Ct. 303 (1951). See *State v. Huffman,* 228 Kan. 186, 612 P.2d 630 (1980).

The First and Fourteenth Amendments guarantee that no state shall abridge the freedom of speech. Freedom of speech is required for the discovery and spread of political truth, and the

most appropriate test of truth is the power of the thought to get itself accepted in the competition of the market. See generally *Cohen v. California,* 403 U.S. 15, 24, 29 L.Ed.2d 284, 91 S.Ct. 1780 (1971).

We have emphasized that the First Amendment embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without prior restraints by the courts.

Where a statute restricts the speech of a private person, the state action may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest.

Here the injunction is a prior restraint in that it suppresses speech in advance of actual expression. There is a heavy presumption against its validity. In *Pickering v. Board of Education,* 391 U.S. 563, 20 L.Ed.2d 811, 88 S.Ct. 1731 (1968), a public school teacher wrote a letter to the editor of a local newspaper citicizing the way in which the board of education and the school superintendent had handled past proposals to raise school taxes. After publication of the letter, the school board asked for the dismissal of the teacher. The court said that public school teachers may not constitutionally be compelled, as a condition of retaining their employment, to relinquish the First Amendment rights that they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they worked. Statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at their nominal superiors. Absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance could not be abridged.

In *Madison Sch. Dist. v. Wisconsin Emp. Rel. Comm'n,* 429 U.S. 167, 50 L.Ed.2d 376, 97 S.Ct. 421 (1976), the court said that whenever a school board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of their employment, or the content of their speech, and that teachers have an equal right to speak at such meetings.

In this case, McKinney, and Taylor, an employee of the District, had the right to comment on matters concerning the school

district, whether at a public meeting or at a school board meeting. The injunction acted as a prior restraint on such rights. The injunction restrained them from interfering with the administrators' work activities, but there is no evidence to show that they had ever attempted to or planned to do so in the future. While an injunction may be used to restrain certain conduct, there first must be some indication that there is a threatened injury. It is only in those instances where unbridled speech threatens a significant state interest that the state is allowed to restrict an individual's exercise of a right guaranteed by the Constitutions. The district court erred in enjoining defendants from holding public meetings or from speaking at school board meetings. This injunction is an unconstitutional prior restraint violating the defendants' constitutional right to freedom of speech guaranteed by the Constitutions of the United States and the State of Kansas.

We have determined that the injunction issued by the court was an improper prior restraint of the defendants' constitutional right to freedom of speech. We, therefore, need not consider whether the injunction is unconstitutional, vague or overly broad.

In addition, McKinney and Taylor claim the judge abused his discretion in refusing to admit evidence for the purpose of fixing the bond and in setting the amount of the bond in the nominal amount of $1,000.00. K.S.A. 60-905(b) provides:

"Unless otherwise provided by statute, no temporary injunction shall operate unless the party obtaining the same shall give an undertaking with one or more sufficient sureties in an amount fixed by the judge and approved by the clerk of the court, securing to the party injured the damages he or she may sustain including attorney fees if it be finally determined that the injunction should not have been granted."

The statutory purpose of the bond is to hold the principal and surety liable if the injunction is wrongful or is dissolved. Since we have determined that the injunction was wrongfully granted, the question of the amount of damages, including attorney fees, sustained by McKinney and Taylor must now be determined by the district court. Until the district court determines the damages, other questions regarding the bond are premature.

The injunction issued by the district court is dissolved. The case is remanded to the district court to determine the amount of damages suffered by the defendants.