(755 P.2d 557)

No. 61,456

STATE OF KANSAS, *ex rel.* Jack D. Walker, M.D., Secretary of Health and Environment, *Appellee,* v. PAUL H. BERGMAN, ALBAN HAUG, and EUGENE E. HAUG, a partnership, d/b/a Crestview Manor, *Appellants.*

Petition for review denied September 27, 1988.

Opinion filed May 13, 1988.

*Eugene T. Hackler*, of Hackler, Londerholm, Corder, Martin & Hackler, Chartered, of Olathe, for the appellants.

*Frank W. Layman*, of the Kansas Department of Health and Environment, of Topeka, for the appellee.

Before DAVIS, P.J., LARSON and GERNON, JJ.

DAVIS, J.: This is an appeal from a permanent injunction issued against the owners and operators of Crestview Manor Nursing Home (collectively referred to as "Crestview Manor") requiring them to allow Terry McGeeney, M.D., to continue treating patients residing at the home. Crestview Manor revoked Dr. McGeeney's privilege.to practice medicine because he allegedly refused to abide by its operating policies. The Kansas Department of Health and Environment (KDHE) filed this action on behalf of Dr. McGeeney's patients, who had been advised by Crestview Manor to choose another physician or move from the home.

In a well-reasoned opinion, the trial court based its permanent injunction upon the right of each resident to choose his or her personal physician, carefully balancing the residents' interests in exercising this right with Crestview Manor's interests in resident care and in maintaining smooth and consistent administration of health services. We find no abuse of discretion and affirm.

Injunction is an equitable remedy and its grant or denial in each case is governed by the principles of equity. The granting or denial of an injunction is discretionary. Absent an abuse of discretion, the appellate court does not normally interfere. *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 226-27, 689 P.2d 860 (1984); *Huser v. Duck Creek Watershed Dist. No. 59*, 234 Kan. 1, 668 P.2d 172 (1983); *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.*, 224 Kan. 357, 373, 582 P.2d 1123 (1978); *Kansas State Bd. of Pharmacy v. Wilson*, 8 Kan. App. 2d 359, 657 P.2d 83 (1983).

KDHE, the licensing agency for adult care homes in Kansas, administers the adult care home licensure act, K.S.A. 39-923 *et seq.*, and enforces the rules and regulations promulgated thereunder. K.A.R. 28-39-76 *et seq.*

Crestview Manor is a licensed intermediate care facility (ICF)

subject to the adult care home licensure act. Any ICF receiving Medicaid funds must also conform to 42 C.F.R. § 442.1 *et seq.* (1987), authorized under 42 U.S.C. § 1302 (1982). K.A.R. 28-39-78 and 42 C.F.R. § 442.311 (1987), which are essentially identical, set forth the residents' bill of rights.

The present controversy arose when Terry McGeeney, M.D., requested that all laboratory procedures for his patients at Crestview Manor be performed at his office. Crestview Manor informed Dr. McGeeney that services in his office-run laboratory did not meet Crestview Manor's quality of care policies because the laboratory was not certified. The letter stated, "Effective April 5, 1987, your privilege to practice medicine at Crestview Manor is revoked."

On March 18, 1987, Crestview Manor notified Dr. McGeeney's patients at the facility that Dr. McGeeney's privilege to practice medicine at Crestview Manor had been revoked. The letter stated: "If he/she/you choose to retain Dr. McGeeney, it will be necessary to move from Crestview Manor on or before April 4, 1987. . . . Any resident who is currently under Dr. McGeeney's service and does not move from Crestview Manor or make arrangements for another physician by April 4, 1987, will be transferred to the service of our Medical Director."

The legal representative of one of Dr. McGeeney's patients at Crestview Manor filed a complaint with KDHE. Concern was expressed about the effect on the resident's health and welfare of being required to change physicians or move to a different nursing home.

By letter dated March 27, 1987, KDHE notified Crestview Manor that the March 18, 1987, letter to its residents was in violation of rules and regulations governing the operation of adult care homes. KDHE interpreted its regulations to forbid licensees of adult care homes from involuntarily discharging a resident except for medical reasons, for the welfare of the resident or others, or for nonpayment of rates and charges, and to require licensees of adult care homes to assure each resident the right to choose a personal physician.

In a response, Crestview Manor defended its decision to deny Dr. McGeeney practice privileges and to require his patients to find another physician or move. Crestview Manor alleges that

Dr. McGeeney has been uncooperative with staff, delinquent in his care of patients, derogatory about the care at Crestview Manor in his medical record entries, and lax in keeping patients' records.

On April 3, 1987, KDHE filed this action, requesting that the court enjoin Crestview Manor from requiring residents to choose between using a physician other than the physician of their choice or moving from the facility. KDHE requested and received an ex parte restraining order.

On April 17, 1987, the matter was heard by the district court. The parties agreed that the case could be decided on stipulated facts. Both parties filed briefs.

On June 24, 1987, the district court permanently enjoined Crestview Manor from enforcing the terms of its March 18, 1987, letter to its residents or in any way requiring existing residents of Crestview Manor to utilize a physician other than the physician of their choice.

The district court held that an ICF resident's right to choose his or her personal physician is protected by the guarantees set forth in the residents' bill of rights. The residents' bill of rights requires the licensee to assure residents "their rights as persons and citizens," including the rights to be informed of a medical condition by a physician unless medically contraindicated, to participate in planning medical treatment, and to refuse examination or treatment, K.A.R. 28-39-78(a)(2), and the right to privacy, K.A.R. 28-39-78(a)(9).

The court found that any one of these guarantees was broad enough to encompass and protect a resident's choice of a personal physician. The court concluded that "an ICF must protect the residents' right to choose a physician and cannot require a resident to change physicians unless some interest of the ICF is so overwhelming that an exception to the resident's right is appropriate."

The court balanced the interests of Crestview Manor residents in exercising the right to choose a personal physician with Crestview Manor's interests in resident care and in maintaining smooth and consistent administration of services. The court recognized three instances in which an ICF's interests may override a resident's right to treatment by a physician of his or

her choice. First, the court indicated that the interest of an ICF in preserving its residents' lives may override the right to choose a physician. The court, however, found, "In the present case, nothing before the Court shows that Dr. McGeeney's patients were in danger of losing their lives because of his treatment." Second, the court noted that an ICF has an interest in protecting innocent third parties, but found that the protection of third parties was not a concern in this case. Third, the court recognized that an ICF has an interest in setting internal standards and procedures, "but it would be a rare case where a physician['s] refusal would require an ICF to ignore a resident's protected right to choose a physician."

In granting the injunction, the trial court adopted KDHE's interpretation of its regulations. According to KDHE, the right of each resident to choose his or her own physician is implicit in the residents' bill of rights, K.A.R. 28-39-78. This interpretion finds support in recent changes in federal law governing nursing homes that receive Medicare and Medicaid funds:

"(c) REQUIREMENTS RELATING TO RESIDENTS' RIGHTS.—
  (1) GENERAL RIGHTS.—
      (A) SPECIFIED RIGHTS.—A skilled nursing facility must protect and promote the rights of each resident, including each of the following rights:
      (i) FREE CHOICE.—The right to choose a personal attending physician, to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident's well-being, and (except with respect to a resident adjudged incompetent) to participate in planning care and treatment or changes in care and treatment." Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4201(c), 101 Stat. 1330-165 (1987) (Medicare); Pub. L. No. 100-203, § 4211(c), 101 Stat. 1330-188 (1987) (Medicaid).

State and federal regulations provide that a resident shall be transferred or discharged from the facility involuntarily only for (1) medical reasons, (2) the welfare of the resident or others, or (3) nonpayment of the rates and charges imposed by the adult care home. K.A.R. 28-39-78(a)(3); 42 C.F.R. § 442.311(c) (1987); see Omnibus Budget Reconciliation Act of 1987 Pub. L. No. 100-203, § 4201(c)(2)(a), 101 Stat. 1330-166; Pub. L. No. 100-203, § 4211(c)(2)(a), 101 Stat. 1330-190.

KDHE's "interpretation of its regulations will not be disturbed

on appeal unless the interpretation is clearly erroneous or inconsistent with the regulation[s]." *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809, 667 P.2d 306 (1983) (citing *Columbian Fuel Corp. v. Panhandle Eastern Pipe Line Co.*, 176 Kan. 433, 440, 271 P.2d 773 [1954]; *McClanahan v. Mulcrome*, 636 F.2d 1190 [10th Cir. 1980]).

KDHE's interpretation of its regulations to require Crestview Manor to accord each resident the right to choose his or her personal physician is neither clearly erroneous nor inconsistent with the regulations. We find no abuse of discretion by the trial court in its grant of a permanent injunction.

Crestview Manor contends the court erred in ruling that the sole issue was whether an ICF can force an existing resident to change his or her physician or move from the facility. Crestview Manor argues the court failed to consider its interests adequately, including its legal duty to provide care for its residents as required by state and federal regulations. The issue, Crestview Manor contends, is whether an owner or operator of an ICF in Kansas can revoke a physician's practice privileges.

Crestview Manor contends it has the authority to revoke a physician's practice privileges because "[t]he final responsibility and supervision of a resident's health care is the obligation of the facility and the facility's administrator under the laws and regulations of Kansas."

Contrary to Crestview Manor's contention, K.A.R. 28-39-88(c) provides that "[t]he health care of the resident shall be under the supervision of a physician." See 42 C.F.R. § 442.346(a) (1987); Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 4201(b)(6)(A), 101 Stat. 1330-164; Pub. L. No. 100-203, § 4211(b)(6)(A), 101 Stat. 1330-187. K.S.A. 39-923(a)(3) defines an ICF as "any place or facility . . . caring for three or more individuals . . . unable to sufficiently or properly care for themselves and for whom reception, accommodation, board and supervised *nursing* care and treatment is provided, and which place or facility is staffed to provide . . . licensed *nursing* personnel plus additional staff and is maintained and equipped primarily for the accommodation of individuals not acutely ill or in need of hospital care or skilled nursing care but who require supervised *nursing* care." (Emphasis added.)

Crestview Manor argues that K.A.R. 28-39-88(c)(1), which provides, "The facility shall ensure, to the fullest extent possible, that . . . [t]he resident's physician sees the resident whenever necessary," authorizes the facility to terminate Dr. McGeeney's practice privileges. By providing that the facility's duty is to "ensure, *to the fullest extent possible*," (emphasis supplied) the regulation recognizes the limitations on the facility's ability to supervise the physician-patient relationship. K.A.R. 28-39-88(c)(1) does not give the facility authority to choose a resident's personal physician.

Crestview Manor contends that the regulations give it supervisory authority over resident health care. Federal regulations state that the duties of the resident services director "must include *coordinating and monitoring* each resident's overall plan of care." 42 C.F.R. § 442.304 (1987) (emphasis added). "The licensee shall *have and implement written resident care policies and procedures* for meeting the total medical, nursing, nutritional and psychosocial needs of residents." K.A.R. 28-39-84 (emphasis added); see 42 C.F.R. § 442.305 (1987). The administrator of an ICF is responsible for the *"overall management"* of the facility, including planning, organizing, and directing the operation of the facility, and implementing operational policies and procedures for the facility. K.A.R. 28-39-83(c)(1), (2); see 42 C.F.R. § 442.303(b)(1) and (2) (1987).

Although the regulations grant an ICF broad supervisory authority over the facility's management and require an ICF to coordinate and monitor each resident's plan of care, they require that the health care of the resident be under the supervision of a physician. K.A.R. 28-39-88(c). As noted by the trial court, except in extreme circumstances, not present in this case, an ICF's responsibilities can be performed without impinging on its residents' right to choose their personal physicians.

Crestview Manor cites *Foote v. Community Hospital of Beloit*, 195 Kan. 385, 405 P.2d 423 (1965), to support its contention that an ICF has authority to exclude a licensed physician from the facility. *Foote*, however, involves a hospital, which, by definition, has an organized medical staff of physicians. See K.S.A. 65-425. Adult care homes are specifically excluded from the medical care facility licensure statutes. See K.S.A. 65-442a

("Nothing in this act shall be construed to apply to any adult care home licensed under the provisions of article 9 of chapter 39 of the Kansas Statutes Annotated.").

K.S.A. 65-431 provides in part:

"Boards of trustees or directors of facilities licensed pursuant to the provisions of this act shall have the right to select the professional staff members of such facilities . . . and no rules and regulations or standards of the licensing agency shall be valid which, if enforced, would interfere in such selection or employment."

"The board of directors of a hospital is thus given plenary power to select its professional staff and the state has expressed a policy not to interfere with that selection." *Foote*, 195 Kan. at 387.

The hospital's authority to select its staff reflects the liability it assumes for patient care. The long-established rule in Kansas is that " '[a] private hospital is bound to exercise toward a patient such reasonable care as his known condition may require, the degree of care being in proportion to his known physical and mental ailments. The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in the community and required by the express or implied contract of the undertaking.' " *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 49, 510 P.2d 190 (1973) (quoting *Goheen v. Graber*, 181 Kan. 107, Syl. ¶ 3, 309 P.2d 636 [1957]); *Avey v. St. Francis Hospital & School of Nursing*, 201 Kan. 687, 695, 442 P.2d 1013 (1968).

Crestview Manor argues that it must have authority to select its staff of physicians to shield itself from liability. It cites *Juhnke v. Evangelical Lutheran Good Samaritan Society*, 6 Kan. App. 2d 744, 634 P.2d 1132 (1981), as holding an adult care home liable for the acts of a person who is neither an employee nor an agent of the home. In *Juhnke*, a resident was seriously injured when another resident pushed her to the floor. This court recited the general rule that "the proprietors of a nursing home are under a duty to exercise reasonable care to avoid injuries to patients, and the reasonableness of such care is to be assessed in the light of the patient's physical and mental condition." 6 Kan. App. 2d at

748. *Juhnke* provides no authority for Crestview Manor's asserted right to revoke a physician's staff privileges and thereby deny residents the right to choose a personal physician.

Affirmed.