No. 119,919

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LISA A. SMITH,
*Appellant*.

SYLLABUS BY THE COURT

1.

Appellate courts generally avoid making unnecessary constitutional decisions. Thus, when there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge.

2.

When the controlling facts are based on written or documentary evidence or stipulations, the appellate court has as good an opportunity to examine and consider the evidence as did the court below.

3.

The Fourth Amendment concept that persons may legitimately demand privacy in the curtilage of their homes from arbitrary interference by the government does not apply in determining whether a person made a statement publicly for purposes of a defamation claim.

1

4.

In an appeal from a criminal judgment that a person violated a protection from stalking order, an appellate court may determine the constitutionality of the underlying order.

5.

To prove defamation, the plaintiff must prove knowingly false and defamatory words that are communicated to someone else and that injure the reputation of the person defamed.

6.

Generally, a prior restraint restricts speech in advance based on content and carries a presumption of unconstitutionality.

7.

The purpose of our stalking statute is to protect innocent citizens from threatening conduct that subjects them to a reasonable fear of physical harm. The stalking statute expressly excludes constitutionally protected activity from its definition and does not reflect any State interest in preventing slander.

8.

Under the circumstances of this case, the protection from stalking order, as applied solely to speech which does not subject a person to a reasonable fear of physical harm, is an improper prior restraint of the appellant's constitutional right to freedom of speech.

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed September 27, 2019. Reversed and sentence vacated.

*Adam M. Hall*, of Thompson Warner, P.A., of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

GARDNER, J.:  Lisa A. Smith appeals the district court's decision finding that she violated a protection from stalking (PFS) order. Smith argues that the PFS order, as applied, is an unconstitutional prior restraint on her free-speech rights. In the alternative, Smith argues that insufficient evidence shows that she made a disparaging statement "in public," as the PFS order prohibited, since she made the statement to her husband while standing on the doorstep to her home. We find that sufficient evidence shows Smith made the statement publicly. But we agree that the PFS order, as applied, is an unconstitutional prior restraint on her free-speech rights. As a result, we reverse her conviction and vacate her sentence.

FACTUAL AND PROCEDURAL BACKGROUND

Smith lives across the street from Jonathan Perez. The two families apparently have a history of conflict which includes each making criminal allegations against the other. In 2016 or 2017, Smith accused Perez of sexual misconduct with Smith's child. In April 2017, both Smith and Perez received temporary orders of stalking against the other. After a trial in June 2017, the district court denied Smith a final PFS order against Perez but granted Perez a final PFS order against Smith. To get such a civil order, Perez had to prove by a preponderance of the evidence that Smith was stalking him. See K.S.A. 2018 Supp. 60-31a05(a); *Elem v. Elem*, No. 119,774, 2019 WL 1746753, at *5-6 (Kan. App.

3

2019) (unpublished opinion). But our record on appeal does not include the record from that civil trial.

The PFS order against Smith, in addition to the typical PFS prohibitions on conduct (following, harassing, telephoning, or contacting a named person), added the following special prohibition on speech which Smith challenges here:

"Defendant shall not make direct or indirect disparaging statements in public regarding plaintiff being a child molest[e]r. 'Public' includes social media postings. Any such postings made directly or indirectly by defendant shall be removed immediately. This Order authorizes social media entities to remove disparaging postings regarding Plaintiff."

In November 2017, Smith, while entering her residence, turned toward her husband who was standing in their driveway and said, "come inside away from the pedophile." Smith made that statement loudly enough that Perez and his family heard it from their home across the street. Perez also captured the statement through a video and audio surveillance system installed outside his residence.

After being criminally charged with violating the PFS order, Smith moved to dismiss the case. She argued that the PFS order was an unconstitutional, content-based restriction on her free-speech rights and that criminal prosecution under K.S.A. 2017 Supp. 21-5924 for violating the order was unconstitutional as applied to her. The State argued that Smith's speech was not protected by the First Amendment to the United States Constitution, but even if it were, the PFS order passed constitutional muster. The district court held a hearing on Smith's motion to dismiss then denied it.

The parties then tried the case to the bench on stipulated facts. The parties stipulated that the PFS order had been issued, that it was in effect at the time of Smith's

4

statement, and that it prohibited Smith from making disparaging statements in public about Perez being a child molester. They also stipulated to these facts:

"On Thursday, November 23rd, 2017, at approximately 5:00 p.m., Jonathan Perez was standing in the front yard of [his home] with his family. During the time Perez was in the yard, the Defendant arrived home . . . with her husband. Both [homes] are located on a residential street. These houses are across the street from one another. While the Defendant was going inside her residence, she turned toward her husband, who was standing in their driveway, and said 'come inside away from the pedophile.' This statement was made loud[ly] enough that Perez and his family heard the above statement from across the street."

As exhibits, the State admitted the complaint against Smith and the video of Smith making the statement to her husband.

Smith offered no additional evidence. Instead, she renewed her argument that the PFS order violated her free-speech rights. She also argued that the State had not met its burden to show that Smith had made the statement "in public." The district court found that the PFS order did not violate Smith's constitutional rights and found beyond a reasonable doubt that Smith had violated the order. It sentenced Smith to 90 days in jail but granted her 12 months' probation. Smith timely appeals.

I.     SUFFICIENT EVIDENCE SHOWS SMITH'S STATEMENT WAS MADE IN PUBLIC

We first address Smith's argument that insufficient evidence supports her conviction. This is because "[a]ppellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, Syl. ¶ 3, 367 P.3d 282 (2016).

5

The PFS order prohibited Smith from publicly accusing Perez of being a child molester. Smith argues that she did not violate this order because she made the statement while on her own property and only to her husband who was also on their property. The State counters that, because Smith's statement was made loudly enough to be heard across the street, it was made in public and it violated the terms of the PFS order.

The standard of appellate review is de novo for cases decided by the district court based upon documents and stipulated facts. *State v. Dull*, 298 Kan. 832, 840, 317 P.3d 104 (2014). "Where the controlling facts are based on written or documentary evidence or stipulations, this court has as good an opportunity to examine and consider the evidence as did the court below." *In re Estate of Lasater*, 30 Kan. App. 2d 1021, 1023, 54 P.3d 511 (2002). We apply this standard here.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Smith contends that anything spoken within the curtilage of her home—the area immediately surrounding it— should be considered private. In support of this claim, Smith cites *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). *Oliver* established that curtilage is considered part of the home itself for Fourth Amendment purposes:

> "[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home. See also *Air Pollution Variance Bd. v. Western Alfalfa Corp.*, 416 U.S. 861, 865[, 94 S. Ct. 2114, 2115, 40 L.Ed.2d 607] (1974). This rule is true to the conception of the right to privacy

6

embodied in the Fourth Amendment. The Amendment reflects the recognition of the Framers that certain enclaves should be free from arbitrary government interference. For example, the Court since the enactment of the Fourth Amendment has stressed 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.' [Citations omitted.]" *Oliver*, 466 U.S. at 178.

But this Fourth Amendment concept—that persons may legitimately demand privacy in the curtilage of their homes from arbitrary interference by the government—does not apply here. No Fourth Amendment issue has been raised and none is evident from the facts, which show no government actor.

Smith made a verbal statement loudly enough that her neighbors across the street heard it and their video/audio recording captured it. Smith stipulated to that fact. So even if we were to analyze these facts using a curtilage analysis, Smith's words, although uttered within the safe harbor of the curtilage of her house, carried beyond that curtilage, wafted across the street, and invaded the curtilage of Perez' house. Sufficient evidence shows that Smith made the statement in public.

## II.     SMITH'S CONSTITUTIONAL QUESTION IS NOT PROCEDURALLY BARRED

Before reaching the merits of Smith's constitutional question, we must address the State's procedural argument that Smith's arguments are not properly made in this appeal. It argues that Smith's real challenge is to the underlying PFS order. Thus Smith should have objected to that order's unconstitutionality at the time the district court issued it— not when the State seeks to criminally enforce its violation. The State asserts that Smith's current claim is a collateral attack to an earlier order. The State concedes that it did not raise this issue below and raises it for the first time on appeal, but it contends that we may reach the merits of this claim because the district court is right for the wrong reason. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

7

We agree that based on *Phillips*, we may reach the merits of the issue. But we resolve the issue against the State. The State cites the collateral bar rule, but that rule prohibits review of the validity of the underlying order in a criminal contempt appeal, subject to exceptions. See *State v. Alston*, 256 Kan. 571, 584-86, 887 P.2d 681 (1994). This is not a criminal contempt appeal. The State also cites *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 58 P.3d 1284 (2002). But that case merely held that collateral attacks are generally not favored by the law. See 274 Kan. at 1024. We have no quarrel with that general proposition but we do not find it controlling here given our criminal appeal statute.

Smith is appealing a criminal judgment. The right to appeal is statutory. The applicable criminal appeal statute, K.S.A. 2018 Supp. 22-3602(a), expressly provides that in an appeal from a criminal judgment, "any decision of the district court or intermediate order made in the progress of the case may be reviewed." The PFS order is such an order. And Smith's free speech issue is now ripe because only the speech prohibition in the PFS order is being enforced against her. So even if Smith could have raised her First Amendment objections when the district court issued the civil PFS order, we find no bar to her raising them now. This appeal is not procedurally barred.

III.    SMITH'S SPEECH WARRANTS FIRST AMENDMENT PROTECTION

We thus reach Smith's argument that the PFS order, as applied, constituted a content-based prior restraint on her speech and was thus presumptively invalid.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." The First Amendment is applicable to the states through the Fourteenth Amendment. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 33, 20 P.3d 39 (2001). Similarly, Section 11 of the Kansas Constitution Bill of Rights states each person

8

may freely speak, write, or publish his or her sentiment on all subjects, "being responsible for the abuse of such rights."

It is well-established that content-based speech restrictions are presumptively invalid. See *United States v. Alvarez*, 567 U.S. 709, 716-17, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012). But certain categories of expression may be restricted without violating the First Amendment. See *United States. v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010). Among these categories which may be restricted are: advocacy intended, and likely, to incite imminent lawless action; defamation; speech integral to criminal conduct; "fighting words"; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent. *Alvarez*, 567 U.S. at 717; see *State v. Huffman*, 228 Kan. 186, 190, 612 P.2d 630 (1980).

The State invokes the defamation category, arguing that Smith's speech is not entitled to First Amendment protection because it was "almost certainly defamatory." Yet, as we detail below, the State failed to prove at trial that Smith's speech was, in fact, defamatory.

1.    *The State fails to show that Smith's slanderous statement is unprotected.*

The State fails to show that a one-time verbal statement is not entitled to First Amendment protection. The State relies on cases generally holding that "defamation" falls outside First Amendment protection. Yet the cases that so hold involve libel, not slander as we have here. See *R.A.V. v. St. Paul*, 505 U.S. 377, 382-84, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) ("Our decisions since the 1960's have narrowed the scope of the traditional categorical exceptions for defamation.") (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-83, 84 S. Ct. 710, 11 L. Ed. 2d 686 [1964] [providing substantial protection for speech about public figures]; *Gertz v. Robert Welch, Inc.*, 418

9

U.S. 323, 345-50, 94 S. Ct. 2997, 41 L. Ed. 2d 789 [1974] [imposing some limits on liability for defaming a private figure]); see generally *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13-17, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) (describing narrowing of the defamation exception to free speech protection; addressing only libel cases); *Huffman*, 228 Kan. at 190 (listing libel as among the limited categories of speech not protected by the First Amendment).

Because libel is based on written statements, proof of what statement the speaker made is more certain than proof of verbal statements. And written statements are capable of swift and accurate distribution to the masses, thus their potential for damage to one's reputation is greater than damage by verbal statements. In those respects, written statements appear to be different in kind than the one-time verbal statement Smith made to her spouse which was heard by no one but her spouse and her neighbors. The State offers no case in which a verbal statement was excluded from First Amendment protection as defamatory. The State relies on cases generally holding that "defamation" is outside First Amendment protection. Yet the cases that so hold involve libel, not slander as we have here. The stipulated facts and exhibits here are unlike those in cases which uphold restrictions on defamatory statements.

2.      *The State fails to show that Smith's statement was false.*

But even if we assume that a slanderous statement could be defamatory speech excluded from First Amendment protection, the State fails to meet its burden to show that Smith's statement which labeled Perez a pedophile was, in fact, defamatory. Her motion to dismiss accused Perez of having committed sexual misconduct against her child. Yet no evidence shows whether that accusation is true or false. The State argued that Smith's allegation of Perez' abuse of her child had been investigated but not charged. The State now adds that Perez is not listed as an offender on the Kansas Adult Supervised

10

Population Electronic Repository or the Kansas Bureau of Investigation offender registration.

But neither party submitted this or any other evidence at trial to show the truth or falsity of Smith's statement. In short, we have arguments of counsel but no evidence to prove the falsity of Smith's statement, as is necessary to prove defamation. Statements of counsel are not evidence. See *State v. Brown*, 181 Kan. 375, 394, 312 P.2d 832 (1959).

    3.    *The State fails to show that Smith's statement was knowingly false.*

Even if we could rely on the State's arguments, the State does not meet its burden to show defamation. Falsity alone may not suffice to bring the speech outside the First Amendment. Based on the State's arguments, Smith may have sincerely believed that her statement about Perez was true, given her report to police that Perez had abused her child. "Even when considering some instances of defamation and fraud, moreover, the Court has been careful to instruct that falsity alone may not suffice to bring the speech outside the First Amendment. The statement must be a knowing or reckless falsehood." *Alvarez*, 567 U.S. at 719 (finding false statements generally are not a new category of unprotected speech exempt from the normal prohibition on content-based restriction). In short, the State has not proved the knowing falsity of Smith's statement as is necessary to take her speech outside the protection of the First Amendment.

    4.    *The State fails to show that Smith's statement damaged Perez' reputation.*

Even if we assume that Smith's statement was knowingly false and that slander is as equally unprotected as libel, the State cannot establish defamation without proof of harm to reputation. "[D]amage to one's reputation is the essence and gravamen of an action for defamation." *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 6, 649 P.2d 1239 (1982).

11

"'The elements of defamation include false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed.' *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495 (2002). '[D]amage to one's reputation is the essence and gravamen of an action for defamation.' *Gobin v. Globe Publishing Co*., 232 Kan. 1, 6, 649 P.2d 1239 (1982). 'Proof of such damages typically entails showing that persons were deterred from associating with the plaintiff, that the plaintiff's reputation had been lowered in the community, or that the plaintiff's profession suffered.' *Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1385 (D. Kan. 1996). 'Damage to reputation can be inferred from the evidence so long as the inference is reasonable.' *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1072 (D. Kan. 2006) (citing *Moran v. State*, 267 Kan. 583, 590, 985 P.2d 127 [1999]). Additionally, '[a] victim's own observations may be suitable as proof of harm to his reputation for defamation cases in Kansas . . . but they must raise a reasonable inference that the damage was caused by the plaintiff's statements. [Citation omitted.]' *Debord v. Mercy Health System of Kansas, Inc*., 860 F. Supp. 2d 1263, 1283 (D. Kan. 2012). However, '[b]road and factually unsupported allegations . . . do not support a claim for damages for alleged defamation.' *Davis v. Hildyard*, 34 Kan. App. 2d 22, 30, 113 P.3d 827 (2005)." *Rockhill Pain Specialists v. Hancock*, 55 Kan. App. 2d 161, 185, 412 P.3d 1008 (2017), *rev. denied* 308 Kan. 1595 (2018).

The stipulated facts and exhibits raise no reasonable inference that Smith caused any harm to Perez' reputation. They show only that Perez, his family, and Smith's husband heard Smith's statement. Because Smith made the statement only once and no others apparently heard it, Smith caused no damage to Perez' reputation in the community by saying it. No facts thus make a prima facie showing that Smith's statement was defamatory so as to potentially exclude it from First Amendment protection. As a result, we find that Smith's statement warrants First Amendment protection.

12

## IV. THE PFS ORDER IS A CONTENT-BASED RESTRICTION

The State contends that it is unclear whether the PFS order is a content-based restriction and that historically, this type of restriction was one which "exist[ed] to trample a viewpoint, perspective, or opinion—and, as an extension, foreclose public debate on the issue."

We find it clear that the PFS order is a content-based prior restraint on speech. It is a court order forbidding a specific speaker from specific expression. It enjoins Smith from "mak[ing] direct or indirect disparaging statements in public regarding plaintiff being a child molest[e]r." It is thus a kind of judicial injunction and a form of prior restraint. See *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 42 (10th Cir. 2013).

As a general rule, the government lacks power "'to restrict expression because of its message, its ideas, its subject matter, or its content.' As a result, the Constitution 'demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality.' [Citations omitted.]" *Alvarez*, 567 U.S. at 716-17; see *Smith v. Martens*, 279 Kan. 242, 252-53, 106 P.3d 28 (2005). As our Supreme Court has recognized, this reflects the legal theory that our free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them beforehand.

> "Statutes which authorize restraining orders, temporary injunctions and permanent injunctions are a legislatively created system that permits suppression of speech in advance of actual expression and may be deemed a prior restraint. Prior restraints are not unconstitutional per se. Any system of prior restraint, however, comes to a court bearing a heavy presumption against its constitutional validity. The presumption against prior restraint is heavier—and the degree of protection is broader— than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few

who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of free-wheeling censorship are formidable. See generally *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975)." *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 233-34, 689 P.2d 860 (1984).

The PFS order restricts Smith's speech based on its content in advance of its actual expression, so it is presumptively unconstitutional.

## V.    THE STATE FAILS TO SHOW THAT THE PFS ORDER SERVES A COMPELLING INTEREST

Restrictions on free speech are valid only where narrowly tailored to serve compelling public interests and where no less restrictive alternatives are available. *Reed v. Town of Gilbert*, 576 U.S. __, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015); *McKinney*, 236 Kan. at 227-28, 236 (finding injunction was an improper prior restraint of the defendants' constitutional right to freedom of speech).

The state's interest here is reflected in the protection from stalking statute and in the underlying stalking statute, K.S.A. 2018 Supp. 21-5427. The protection from stalking statute defines stalking as:  "an intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 2018 Supp. 60-31a02(d). Harassment is defined as "a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 2018 Supp. 60-31a02(d)(1). "Course of conduct" is defined as "conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" K.S.A. 2018 Supp. 60-31a02(d)(2).

14

The purpose of the protection from stalking statute, and the underlying stalking statute, is to protect innocent citizens from threatening conduct that subjects them to a reasonable fear of physical harm.

> "'The statute's purpose is legitimate: to protect innocent citizens from intentional or knowingly threatening conduct that subjects them to a reasonable fear of physical harm. Furthermore, the statute is tailored so that it does not substantially infringe upon speech protected by the First Amendment. It regulates the manner in which individuals interrelate with one another and prohibits individuals from communicating with others in a way that is intended or known to cause fear of physical harm. . . . [T]he statute permits all communications between individuals that are conducted in a time, place and manner that do not intentionally or knowingly cause the receiver of the message reasonably to fear for his or her physical safety. The statute's legitimate sweep does not portend any substantial burden on constitutionally protected conduct, and we find no realistic danger that the statute will compromise the First Amendment rights of parties not before the Court.'" *State v. Whitesell*, 270 Kan. 259, 272-73, 13 P.3d 887 (2000).

See *Smith*, 279 Kan. at 254-56 (finding the predecessor to K.S.A. 2018 Supp. 60-31a02 is not unconstitutionally overbroad).

The stipulated facts fail to establish that Perez or anyone else in his family had a reasonable fear of physical harm because of Smith's statement, as these stalking statutes require. See *C.M. v. McKee*, 54 Kan. App. 2d 318, 321-22, 398 P.3d 228 (2017); *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 741, 159 P.3d 1035 (2007). Nor does Smith's statement on its face pose any threat to a reasonable person's safety.

The State fails to show that it has a compelling state interest in protecting citizens from slanderous statements, generally. Instead, the legitimate governmental purpose of these statutes is to prevent physical violence:

15

"'[The stalking statute] serves significant and substantial state interests by providing law enforcement officials with a means of intervention in potentially dangerous situations before actual violence occurs, and it enables citizens to protect themselves from recurring intimidation, fear-provoking conduct and physical violence.'" *Whitesell*, 270 Kan. at 272 (quoting *State v. Ruesch*, 214 Wis. 2d 548, 559, 571 N.W.2d 898 [1997]).

These stalking statutes do not reflect any State interest in preventing defamatory speech. When a person is slandered, the legal recourse is to file a civil defamation action against the speaker and prove (1) false and defamatory words (2) that are communicated to someone else and (3) that injure the reputation of the person defamed. *Byers v. Snyder*, 44 Kan. App. 2d 380, 396, 237 P.3d 1258 (2010). The appropriate recourse is not to seek a PFS order prohibiting speech that poses no threat of physical harm, then to criminally enforce only the speech prohibition of a PFS order, as the State does here.

The protection from stalking statute expressly excludes "constitutionally protected activity" from the definition of course of conduct. See K.S.A. 2018 Supp. 60-31a02(d). That exclusion is paramount to its constitutionality. See *Whitesell*, 270 Kan. at 272 (finding to predecessor to K.S.A. 2018 Supp. 60-31a02 is not unconstitutionally overbroad on its face, as "the type of speech and conduct which it prohibits is not the kind protected by the First Amendment"); see also *Smith*, 279 Kan. at 254-56 (same). But the type of speech this PFS order prohibits is protected by the First Amendment.

The State has shown no compelling interest in prohibiting, via the protection from stalking statute, non-threatening speech that does not subject the hearer to a reasonable fear of physical harm. Nor has the State shown that this PFS order's prohibition on speech that poses no threat of physical harm is narrowly tailored to serve any compelling state interest. We thus find the PFS order, as applied, is an improper prior restraint of Smith's constitutional right to freedom of speech. Accordingly, we reverse the conviction and vacate Smith's sentence.

16