No. 91,827

BECKY SMITH, *Appellee*, v. PHIL MARTENS, *Appellant*.
106 P.3d 28

Opinion filed February 18, 2005.

*Jonathan L. Laurans*, of Kansas City, Missouri, argued the case and was on the brief for appellant.

*Scott C. Long*, of McCormick, Adam & Long, P.A., of Overland Park, argued the cause, and *Michael W. Lucansky*, of Law Offices of Michael W. Lucansky, of Overland Park, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Becky Smith filed an action under the civil Protection from Stalking Act (Act), K.S.A. 2003 Supp. 60-31a01 *et seq.*, seeking a protective order against her former husband, Phil Martens. The district court ruled that the Act was constitutional, issued a 1-year protection from stalking order (PSO), and awarded Smith $5,000 in attorney fees. Martens appeals, raising numerous issues.

The PSO issued by the district court expired on November 24, 2004, rendering all issues raised in this appeal moot. Before the case was argued by the parties on December 1, 2004, this court, by order dated October 26, 2004, advised the parties to respond as to whether Martens' claims regarding the protective order should be dismissed as moot. Martens' attorney acknowledged that all matters were moot but emphasized that a controversy remained regarding the attorney fees granted to Smith by the district court, and he further emphasized that the issue of the constitutionality of the Act was a matter of statewide interest and importance and was a question likely to occur in the future. Martens has urged this court to address the issues raised by his appeal.

"The general rule is that an appellate court does not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive."

"An appellate court may sometimes elect to entertain issues which, although moot, are subjects of real controversy and include issues of statewide interest and importance. Where a particular issue, although moot, is one capable of repetition

and one of public importance, an appellate court may consider the appeal and render an opinion." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, Syl. ¶¶ 1 and 2, 912 P.2d 716 (1996).

The constitutionality of the Act, on its face, is a matter of public importance capable of repetition. We therefore elect to entertain this issue. The remaining issues consisting of the constitutionality of the Act as applied, evidentiary issues, and an issue involving the trial court's issuance of an injunction are moot. Any judgment issued by this court on all but the attorney fees question would not be enforceable because of the lapse of time, and the failure to address such issues would not affect rights vital to the parties. Our review of the record furthers satisfies this court that the question of attorney fees was properly handled by the trial court. Thus, all issues except the constitutionality of K.S.A. 2003 Supp. 60-31a01 *et seq.*, are answered. Since we have elected not to address the other issues and the question of attorney fees is so intimately connected with those issues, we dismiss the question of attorney fees noting that this issue was thoroughly considered by the district court.

## 1. Constitutionality of K.S.A. 2003 Supp. 60-31a01 *et seq.*

Martens contends that K.S.A. 2003 Supp. 60-31a01 *et seq.*, is both unconstitutionally vague on its face and overbroad. He also contends that the Act, specifically K.S.A. 2003 Supp. 60-31a02, is vague as applied to him, but that issue has been dismissed by this court as moot.

"Whether a statute is unconstitutionally vague or overbroad is a question of law over which this court has unlimited review. The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond reasonable doubt." *State v. Whitesell*, 270 Kan. 259, Syl. ¶ 1, 13 P.3d 887 (2000).

### A. Vagueness

"A criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured

by common understanding and practice. The determination of whether a criminal statute is unconstitutionally vague involves a second inquiry of whether the law adequately guards against arbitrary and discriminatory enforcement. When making either inquiry, the court should bear in mind that the standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement." *State v. Bryan*, 259 Kan. 143, Syl. ¶ 2, 910 P.2d 212 (1996).

Martens argues that objectionable language identified by this court in the criminal stalking statute, K.S.A. 2003 Supp. 21-3438, is still contained in the Act, K.S.A. 2003 Supp. 60-31a01 *et seq.*, rendering the civil scheme unconstitutionally vague on its face. Resolution of this argument is accomplished by first examining the history of the criminal stalking statute and its relevant case law in conjunction with the civil stalking Act and its corresponding legislative history at issue in this case.

### Criminal Stalking Statute and Case Law

The criminal stalking statute, K.S.A. 2003 Supp. 21-3438, was enacted in 1992 and has been amended five times. See L. 1992, ch. 298, sec. 95; L. 1993, ch. 291, sec. 253; L. 1994, ch. 348, sec. 13; L. 1995, ch. 251, sec. 10; L. 2000, ch. 181, sec. 5; L. 2002, ch. 141, sec. 10. Relevant to this case, K.S.A. 1994 Supp. 21-3438 provided:

"(a) Stalking is an intentional and malicious following *or* course of conduct directed at a specific person when such following *or* course of conduct seriously alarms, annoys or harasses the person, and which serves no legitimate purpose.

. . . .

"(d) For the purposes of this section, 'course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose and which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person. Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (Emphasis added.)

In *Bryan*, this court found a portion of the K.S.A. 1994 Supp. 21-3438 criminal stalking statute unconstitutionally vague because it used the terms "alarms," "annoys," and "harasses" without defining them or without including an objective standard with regard to a stalking offense based on a *following*. The *Bryan* court focused

on the "following" element because the 1994 statute defined the "course of conduct" element in relation to an objective standard "which would cause a reasonable person to suffer substantial emotional distress." 259 Kan. at 149-50. After comparing the 1994 statute to the 1992 version of the statute which incorporated an objective standard, the court explained the reasoning behind its decision:

"In the absence of an objective standard, the terms 'annoys,' 'alarms' and 'harasses' subject the defendant to the particular sensibilities of the individual victim. Different persons have different sensibilities, and conduct which annoys or alarms one person may not annoy or alarm another. The victim may be of such a state of mind that conduct which would never annoy, alarm, or harass a reasonable person would seriously annoy, alarm, or harass this victim. In such a case, the defendant would be guilty of stalking, a felony offense, under the 1994 statute, even though a reasonable person in the same situation would not be alarmed, annoyed, or harassed by the defendant's conduct.

"Contrast this statutory language with language requiring that the following must be such that it would cause 'a reasonable person to suffer substantial emotional distress' or place such person in reasonable fear for such person's safety. At the very least, under this language the finder of fact would not be left with the subjective state of mind of the victim as the determining factor but instead would have an objective reasonable person standard by which to determine whether the defendant committed the crime. Similarly, just as the finder of fact would be provided with an objective standard, so too would anyone subject this law be provided with an objective standard to determine what conduct would constitute the crime of stalking." 259 Kan. at 154-55.

In *State v. Rucker*, 267 Kan. 816, 987 P.2d 1080 (1999), the defendant argued that the 1995 version of the criminal stalking statute was unconstitutionally vague because it was unclear from the statute what constituted "alarming, annoying, or harassing" conduct. K.S.A. 21-3438 provided:

"(a) Stalking is an intentional, malicious and repeated following or harassment of another person and making a credible threat with the intent to place such person in reasonable fear for such person's safety.

. . . .

"(d) For the purpose of this section: (1) 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose and which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emo-

tional distress to the person. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

(2) 'Harassment' means a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose."

In conducting its analysis, this court quoted the *Bryan* court's favorable observations of the 1992 version of the statute:

" 'The 1992 version of the Kansas stalking law incorporated an objective standard. As originally enacted, the statute prohibited the "willful, malicious and repeated following *and harassment* of another person." L. 1992, ch. 298, § 95. The term "harassment" was defined as a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and *which would cause a reasonable person to suffer substantial emotional distress* and actually causes that type of distress in the victim. See L. 1992, ch. 298, § 95. Although the terms "alarms," "annoys," and "harasses" were used [in the 1992 version], they were defined by an objective standard in that the conduct must be such as would cause a reasonable person to suffer emotional distress and actually cause such distress.' " *Rucker*, 267 Kan. at 832 (quoting *Bryan*, 259 Kan. at 150).

The *Rucker* court concluded that the 1995 version of 21-3438 resolved the vagueness problems found in *Bryan* by incorporating an objective standard and by defining the terms "course of conduct," "harassment," and "credible threat." 267 Kan. at 832. In *Whitesell*, this court upheld the *Rucker* finding that 21-3438 was not unconstitutionally vague in the absence of any new substantive argument. *Whitesell*, 270 Kan. at 270.

### Civil Stalking Statute and Act

In 2002, the civil Act was first proposed in Senate Bill 474, and it defined stalking as "intentional harassment of another person." The original bill was supported by the Attorney General's Office, the Kansas Coalition Against Sexual and Domestic Violence, the Battered Women's Task Force, the Kansas Women Attorneys Association (WAA), and others. The WAA opined by letter that "the definition of 'stalking' is drafted in such a way as to avoid the constitutional problems of vagueness that plagued the 1994 criminal stalking statute by creating an objective standard by which stalking is measured. See *State v. Bryan*, 259 Kan. 143 (1996)." See Minutes, Sen. Judiciary Comm., February 8, 2002, attach. 7 (Feb-

ruary 6, 2002, letter from WAA President Mary Feighny to Senator David Adkins).

At the February 8, 2002, Senate Judiciary Committee hearing, Ronald Nelson testified on behalf of the Kansas Bar Association (KBA) in opposition to the first draft of the Act:

"Section 2 provides that 'stalking means intentional harassment of another person.' There is no requirement that any threat be explicit or implicit. There is no provision that there be any concern or fear of harm by the supposed victim. Read in its most literal terms, the proposed statute simply reads that a petition can be filed to stop one person from intentionally annoying another person. This type of statute cheapens the very real fear and threat of legitimate abuse victims. This constitutes the worst kind of legislative drafting. Instead of identification of a problem and preparation of a narrowly crafted statute meant to address those concerns, while protecting constitutional rights of the citizenry. It is often said that you can't legislate good manners. However, that is what this bill, in its current form, attempts. Instead of legislating good manners though, this bill seeks to criminalize and punish bad manners.

"Not only does the bill punish de minimus conduct, but also there is no requirement of any continuing or future threat of harm. No 'harm' need to be alleged or shown." Minutes, Sen. Judiciary Comm., February 8, 2002, attach. 4.

The KBA submitted amendments to the bill, which included adding an objective standard to the stalking definition "that places the other person in reasonable fear for that person's own personal safety" and also to the definition of harassment under subsection (b) as "a course of conduct which is directed at a specific person that (I) causes that other person to have a reasonable fear for personal safety, or (ii) serves no legitimate purpose, and is intended either to seriously alarm, threaten, or torment another person." Minutes, Sen. Judiciary Comm., February 25, 2002, attach. 2.

Although this language was initially approved by the Senate, a joint House and Senate conference committee considering the amendments to S.B. 474 subsequently removed the amended language from the definition of harassment in subsection (b) in favor of the original language "directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." Sen. J. 2002, p. 2110.

The specific civil stalking statute at issue in this case, K.S.A. 2003 Supp. 60-31a02, provides:

"(a) 'Stalking' means an intentional harassment of another person that places the other person in reasonable fear for that person's safety.

"(b) 'Harassment' means a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose.

"(c) 'Course of conduct' means conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress. Constitutionally protected activity is not included within the meaning of 'course of conduct.' "

## Discussion

Martens argues the civil stalking statute is identical to the 1994 criminal stalking statute held unconstitutional in *Bryan* and must be similarly stricken. He contends that the objective standard "which would cause a reasonable person to suffer substantial emotional distress emotional distress" is not connected to the phrase "alarms, annoys, torments, or terrorizes" in subsection (b) but, rather, it modifies only the specific term "course of conduct" defined in subsection (c). See K.S.A. 2003 Supp. 60-31a02.

Smith responds that the civil stalking statute is similar to the current version of the criminal stalking statute, which was upheld as constitutional in the face of a vagueness challenge in *Rucker*. She contends that Martens reads the statute too narrowly and fails to read the definition of harassment in subsection (b) in conjunction with the provision in subsection (a) that stalking is the intentional harassment of another person that places the other person in reasonable fear for that person's safety.

Martens' argument is unpersuasive because he fails to read the statute as a whole, nor does he recognize the distinction the *Bryan* court made between the terms "course of conduct" and "following" in defining when the conduct becomes alarming, annoying, or harassing. In *Bryan*, the fact that "course of conduct" was defined with an objective standard differentiated it from a "following" which was not defined with an objective standard. See 259 Kan. at 149-50, 154-55. When the civil statute in this case is viewed as a whole, there are two objective standards used to modify the phrase "alarms, annoys, torments or terrorizes."

The civil stalking statute differs from the 1994 criminal statute in that it defines "stalking" as intentional harassment, it defines "harassment" as a "course of conduct," and then it defines "course of conduct" with an objective standard. If the definitions found in subsections (b) and (c) are inserted into subsection (a) of K.S.A. 2003 Supp. 60-31a02, the statute would read as follows:

" 'Stalking' means an intentional harassment [a knowing and intentional course of conduct—consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress—directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose] of another person that places the other person in reasonable fear for that person's safety."

When the statute is read as a whole incorporating the individual definitions, the course of conduct that seriously alarms, annoys, torments, or terrorizes the other person must be such that it causes a reasonable person to suffer substantial emotional distress. This is similar to that portion of the 1994 criminal statute which was found constitutional in *Bryan* because it incorporated an objective standard. See 259 Kan. at 149.

Moreover, subsection (a) provides another objective standard of "reasonable fear for that person's safety" which modifies harassment, which is defined in part by the terms "alarms," "annoys," "torments," or "terrorizes." In other words, the determination that a person is seriously alarmed, annoyed, tormented, or terrorized is not based solely upon the subjective conclusion of the victim and whether a reasonable person would suffer substantial emotional distress, but also upon the additional objective standard of whether a reasonable person would fear for his or her safety based upon the intentional conduct. Both of these objective standards were cited by this court with approval in *Bryan* in defining the terms annoys, alarms, or harasses. See *Bryan*, 259 Kan. at 154-55. As these objective standards of conduct relate to the terms annoys, alarms, torments, or terrorizes, K.S.A. 2003 Supp. 60-31a02 is not unconstitutionally vague on its face.

Martens also argues that emails and nonviolent, nonthreatening, and nonprofane telephone messages are not the types of contacts

which can be objectively deemed alarming, annoying, tormenting, or terrorizing. He suggests that forwarding an unwanted or tasteless email joke or picture to a friend could be subject to the Act. This argument fails to take into account the objective standard within the Act. In order for any course of conduct to be a violation under the Act, it would have to seriously alarm, annoy, torment, or terrorize the person in a manner that would cause a reasonable person to suffer emotional distress and fear for his or her safety. Martens' above description of emails or telephone calls would not meet this objective standard. We conclude that K.S.A. 2003 Supp. 60-31a02 conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. See *City of Wichita v. Hackett,* 275 Kan. 848, 853, 69 P.3d 621 (2003).

Martens further argues that the term "legitimate purpose" is not defined. In *Rucker,* this court found that the term legitimate purpose, when read in conjunction with the rest of the 1995 criminal stalking statute, did not require a person of common intelligence to guess as to its meaning. It noted that the terms were defined in relation to an objective standard, the statute contained a credible threat element, and it excluded constitutionally protected conduct. The court explained that "[w]hen we focus on the view of reasonable persons as to when lawful authority exists to follow others, the presence or absence of a legitimate purpose for an act or action can readily be determined." *Rucker,* 267 Kan. at 837. See also *State v. Whitesell,* 270 Kan. 259, 269-70, 13 P.3d 887 (2000) (upholding *Rucker* in finding the term "legitimate purpose" was not unconstitutionally vague).

In this case, the language of K.S.A. 2003 Supp. 60-31a02 is very similar to the 1995 criminal statute upheld by this court on two occasions. See *Whitesell,* 270 Kan. at 269-70; *Rucker,* 267 Kan. at 836-37. The term legitimate purpose is part of the definition of harassment and like the terms alarm, annoy, torment, and terrorize is subject to an objective standard. Moreover, constitutionally protected conduct is expressly excluded. Martens' examples of asking for a second date or offering business advice again ignore the objective reasonable person standard and the context in which these

communications were being offered. If the court focuses on the view of a reasonable person as to whether lawful authority exists for a defendant to engage in a specific course of conduct, the presence or absence of a legitimate purpose for the conduct can be readily determined. As such, we conclude that the term legitimate purpose does not render the statute or Act unconstitutionally vague.

K.S.A. 2003 Supp. 60-31a02 is not unconstitutionally vague on its face because two objective standards are used to modify the terms alarms, annoys, torments, or terrorizes; the statute, when read as a whole, clearly conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice; and the term "legitimate purpose" is part of the definition of harassment, subject to an objective standard, expressly excluding constitutionally protected conduct.

B. Overbreadth

Martens argues that K.S.A. 2003 Supp. 60-31a02 is unconstitutionally overbroad because it reaches into the realm of constitutionally protected activity under the First Amendment to the United States Constitution.

"While a vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected. Almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications." *Whitesell*, 270 Kan. 259, Syl. ¶ 6.

The overbreadth doctrine should be employed sparingly and only as a last resort. A balance must be struck between our constitutional right to free speech and our personal right to be left alone when considering stalking laws. 270 Kan. at 271. "Despite our First Amendment rights, we are not free to harm others under the guise of free speech. As speech strays further from the values of persuasion, dialogue, and free exchange of ideas, and moves toward willful threats to perform illegal acts, the State has greater latitude to regulate expression." 270 Kan. 259, Syl. ¶ 7.

No one can use constitutional rights to invade the rights of others. Expressive activity may be prohibited if it involves substantial disorder or invasions of the rights of others. The United States Supreme Court has held that violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact are entitled to no constitutional protection. 270 Kan. at 272 (quoting *Champagne v. Gintick*, 871 F. Supp. 1527, 1534 [D. Conn. 1994]).

In *Whitesell*, this court found that the criminal stalking statute was not unconstitutionally overbroad on its face because the type of speech and conduct it prohibits is not the kind protected by the First Amendment to the United States Constitution. In reaching this decision, the court noted the post-*Bryan* legislative amendment which provided that " '[c]onstitutionally protected activity is not included with the meaning of 'course of conduct,' " and that the statute served a legitimate governmental purpose " 'by providing law enforcement officials with a means of intervention in potentially dangerous situations before actual violence occurs, and it enables citizens to protect themselves from recurring intimidation, fear-provoking conduct and physical violence.' " 270 Kan. at 272 (quoting *State v. Ruesch*, 214 Wis. 2d 548, 559, 571 N.W.2d 898 [1997]).

The court cited numerous cases which had held that similar stalking statutes were not unconstitutionally overbroad, and it concurred with the following reasoning and conclusion of the Virginia Court of Appeals in *Parker v. Com.*, 24 Va. App. 681, 691, 485 S.E.2d 150 (1997):

" 'The statute's purpose is legitimate: to protect innocent citizens from intentional or knowingly threatening conduct that subjects them to a reasonable fear of physical harm. Furthermore, the statute is tailored so that it does not substantially infringe upon speech protected by the First Amendment. It regulates the manner in which individuals interrelate with one another and prohibits individuals from communicating with others in a way that is intended or known to cause fear of physical harm. . . . [T]he statute permits all communications between individuals that are conducted in a time, place and manner that do not intentionally or knowingly cause the receiver of the message reasonably to fear for his or her physical safety. The statute's legitimate sweep does not portend any substantial burden on constitutionally protected conduct, and we find no realistic danger that

the statute will compromise the First Amendment rights of parties not before the Court.' " 270 Kan. at 272-73.

Martens distinguishes this case from *Whitesell* by arguing that this case involves *nonthreatening* words merely seeking association as opposed to the *threats* at issue in *Whitesell*. Martens contends the civil stalking statute is not sufficiently tailored to keep protected speech from governmental prohibition because it leaves the characterization of the terms alarms, annoys, torments or terrorizes to the subjective discretion of the recipient. He argues that the Kansas statute is different from other state statutes which have survived the overbreadth challenges because they were narrowly tailored to keep prohibited speech to a minimum. See *People v. Baer*, 973 P.2d 1225 (Colo. 1999); *State v. Rangel*, 328 Or. 294, 977 P.2d 379 (1999); *Lewis v. State*, 88 S.W.3d 383, 392 (Tex. App. 2002), *cert. denied* 540 U.S. 815 (2003); *Clements v. State*, 19 S.W.3d 442 (Tex. App. 2000).

Smith responds that this court has already approved the language contained in the civil statute by rejecting an overbreadth challenge to the criminal stalking statute in *Whitesell*, that the statute specifically excludes constitutionally protected activity from the meaning of "course of conduct," and that the scrutiny given to this civil statute should not be as great as that given to the criminal stalking statute.

While Smith's response is not entirely correct, since the criminal stalking statute included the term "credible threat" and a violation of the civil stalking statute might result in a criminal conviction pursuant to K.S.A. 2003 Supp. 60-31a06(a)(2), Martens' argument still fails. Although the civil stalking statute does not specifically include a credible threat element, when read as a whole, the expression sought to be protected under the First Amendment must cause a reasonable person to suffer substantial emotional distress and place the person in reasonable fear for that person's safety. As discussed above, the terms alarms, annoys, torments, or terrorizes are subject to two objective standards. These objective standards demonstrate that a substantial portion of the language sought to be protected is not protected by the First Amendment.

While some of the expressions may not include overt threats, these contacts must be considered in the context of the other threatening communications and evidence that Martens was watching Smith and her son in order to determine whether they would cause a reasonable person to fear for his or her safety. See *Castro v. Heinzman,* 194 Or. App. 7, 14, 92 P.3d 758 (2004). The inclusion of objective standards, in conjunction with the express statement in K.S.A. 2003 Supp. 60-31a02 to exclude constitutionally protected activity and its legitimate purpose of allowing persons "to protect themselves from recurring intimidation, fear-provoking conduct, and physical violence," demonstrates that the statute is sufficiently tailored so that it does not substantially infringe upon speech protected by the First Amendment. See *Whitesell,* 270 Kan. at 272. K.S.A. 2003 Supp. 60-31a02 is not unconstitutionally overbroad.

The district court is affirmed in part; the remaining issues are dismissed as moot.