NOT DESIGNATED FOR PUBLICATION

Nos. 113,632
113,633

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTY HERBIG,
*Appellee*,

v.

BENJAMIN J. SZEMERE,
*Appellant*.

CURT CUMMINS,
*Appellee*,

v.

BENJAMIN J. SZEMERE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; THOMAS M. DAWSON, judge pro tem. Opinion filed April 1, 2016. Reversed.

*Terence E. Leibold*, of Petefish, Immel, Heeb & Hird, LLP, of Lawrence, for appellant.

No appearance by appellees.

Before GARDNER, P.J., HILL and POWELL, JJ.

*Per Curiam:* In this consolidated appeal, we reverse two civil protection from stalking orders due to insufficient evidence. Under the Protection from Stalking Act, before a party can receive a protection order, a plaintiff must show evidence of two or

more separate acts directed at a specific person that places the plaintiff in reasonable fear for his or her own safety or another person's safety. See K.S.A. 60-31a02 and K.S.A. 2015 Supp. 60-31a05. Because the parties seeking the orders in these two cases failed to show two or more separate acts, we hold the court improperly issued the protection from stalking orders.

Christy Herbig and Curt Cummins filed petitions for protection from stalking against Benjamin Szemere. Herbig and Cummins work with Szemere at Fort Leavenworth. Both have been Szemere's manager at some point in time. The petitions alleged that Szemere threatened to kill Herbig and Cummins while Szemere was undergoing treatment at Osawatomie State Hospital. The petitions also alleged that during a training session at work, Szemere became agitated, slammed his fists down on a table, and stormed out of the office. Cummins' petition further alleged that Szemere became angry and agitated with people on other occasions.

At the hearing on both cases, Herbig and Cummins appeared without counsel. Herbig testified that she received a letter from the Kansas Department for Aging and Disability that warned her that Szemere had verbally threatened to kill her. Szemere objected on hearsay grounds. But the district court admitted the letter. Szemere did not communicate any threat to Herbig in person, via e-mail, or any other way. The letter was the only information about a threat that Herbig received. The threat made Herbig very nervous.

Herbig testified that Szemere is explosive at work at times. There was a specific incident at a training session where Szemere got angry. Herbig was not present at that training session, but Herbig did have to reprimand Szemere because she was Szemere's superior. Szemere had not threatened Herbig at that time. Szemere had specifically requested to only communicate with Herbig via e-mail because of a pending EEOC complaint, and their contact has been minimal.

2

Cummins testified that he received a similar letter. Cummins has had very little contact with Szemere. Cummins testified that the death threat was the only incident that occurred.

The district court noted that Herbig and Cummins had good reason to be nervous based on the letters they received. After mentioning that he was not sure that the statutory criteria was met, the district judge granted the protection orders. The district judge made clear that he was considering the letter and there were good grounds to appeal on that basis. Szemere appealed. The protection orders are effective until March 30, 2016.

Our rules on questions such as these are well established. When a decision is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence when considered in the light most favorable to the prevailing party supports the decision, it will not be disturbed on appeal. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

The Protection from Stalking Act requires that plaintiffs prove an allegation of stalking by a preponderance of the evidence. K.S.A. 2015 Supp. 60-31a05(a). Stalking means "an intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 60-31a02(a). Harassment is a "knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate person." K.S.A. 60-31a02(b). A course of conduct is "conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress." K.S.A. 60-31a02(c). In sum, Herbig and Cummins were each required to show:  (1) Szemere committed two or more separate acts; (2) directed at a specific person; (3) that placed the person in

3

reasonable fear for that person's safety; and (4) he knowingly and intentionally committed the acts. See K.S.A. 60-31a02.

Szemere now contends that there was insufficient evidence of "two or more separate acts" of harassment. Szemere also challenges the admissibility of the evidence of the death threat and argues that the threat was not made knowingly and intentionally. Putting the latter issues aside and assuming the death threat was one act of harassment directed at both Herbig and Cummins, Szemere is correct that no evidence was presented of a second act that would meet the statutory criteria of being "directed at" either Herbig or Cummins.

The phrases found in the definitions of K.S.A. 60-31a02, "two or more separate acts" and "directed at a specific person," are unambiguous. In *Smith v. Martens*, 279 Kan. 242, 251, 106 P.3d 28 (2005), our Supreme Court said the following:

"If the definitions found in subsections (b) and (c) are inserted into subsection (a) of K.S.A. 2003 Supp. 60-31a02, the statute would read as follows:

"'Stalking' means an intentional harassment [a knowing and intentional course of conduct—consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress—directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose] of another person that places the other person in reasonable fear for that person's safety.'"

In reading the above definition of stalking, "two or more separate acts" is modified by "directed at a specific person." The course of conduct must be directed at a specific person. And, a course of conduct is two or more separate acts. Without these limitations, any unrelated conduct by the defendant would be fair game.

4

This court has clarified that the two acts need not be considered in isolation—rather, they may be considered in the context of all the surrounding facts. *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 738, 159 P.3d 1035 (2007). "It is the course of conduct, not any particular and isolated act of the defendant, which must cause the requisite harm." 37 Kan. App. 2d at 742.

In *Wentland*, the plaintiff predicated her petition on two encounters with the defendant—at a grocery store and again at an airport. On both occasions, the plaintiff saw the defendant staring at her, she felt uncomfortable, and she feared for her safety. The district court found that the incidents at the grocery store and airport "'standing alone would not in the Court's opinion place a reasonable person in fear of their safety. However, a reasonable person has to look at the totality of the circumstances and the relationship and history involved here, which goes back as early as at least the year 2001.'" 37 Kan. App. 2d at 738. In the past, the plaintiff had filed criminal complaints against the defendant and had previously obtained a prior protection from abuse order and two protection from stalking orders against the defendant. The defendant had been previously arrested after police searched the defendant's home and found nude pictures of the plaintiff; photographs of the plaintiff with her eyes blacked out; personal information about the plaintiff such as her telephone number, license plate number, and address; newspaper clippings about the plaintiff; and the defendant had conducted 5,000 Internet searches of the plaintiff's name. On appeal, the defendant argued that the encounters at the grocery store and at the airport, standing alone, did not show a course of conduct that would place a person in reasonable fear for his or her safety. This court found that the two recent encounters constituted a course of conduct under the statute, and the district court properly took the prior events into consideration to determine whether a reasonable person would experience emotional distress from the two recent encounters. 37 Kan. App. 2d at 739-40.

5

Here, the district court made no findings of fact about what two acts it considered. Though one death threat may be more serious than two incidents of staring at a person in a public place, there is no other incident in this case that could be reasonably construed as "directed at" either Herbig or Cummins. In *Wentland*, both acts involved the defendant showing up at places where the plaintiff was present and staring at plaintiff in a way that made her uncomfortable. Here, Herbig testified about Szemere's angry outburst at a training meeting. However, no evidence was presented that the outburst was directed at Herbig or Cummins, that the outburst had anything to do with either of them, or that either was present at the training meeting. In fact, Herbig testified she was not present. Cummins testified that the death threat was the only incident that occurred. Both Herbig and Cummins testified that they had minimal contact with Szemere at work and Szemere had not come by their houses. Herbig testified that Szemere was, at times, explosive at work. But neither Herbig nor Cummins personally observed any threat. There was no evidence of any act, other than the one death threat, directed at Herbig or Cummins.

A panel of this court has held that the conduct "need not be communicated" in *State v. Chestnut*, No. 92,833, 2006 WL 619181, at *4 (Kan. App. 2006) (unpublished opinion), *rev. denied* 281 Kan. 1379 (2006). Thus, the conduct did not necessarily need to occur in the presence of Herbig or Cummins. However, there must be evidence that the conduct was directed at Herbig or Cummins or that language in the statute would be rendered meaningless. Here, there was no evidence that Szemere's outburst at work had anything to do with Herbig or Cummins.

The statutory criteria for stalking was not met in either case. While the district court understandably did not want to take the death threat lightly, a protection from stalking order was not a legal available remedy.

Reversed.

6