NOT DESIGNATED FOR PUBLICATION

No. 114,412

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

S.N. on behalf of Z.N.,
*Appellee*,

v.

BRYAN EHLING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cowley District Court; JAMES T. PRINGLE, judge. Opinion filed October 7, 2016. Appeal dismissed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

No appearances by appellee.

Before BRUNS, P.J., POWELL, J., and STUTZMAN, S.J.

*Per Curiam*:  This appeal arises from the issuance of an order under the Protection from Stalking Act, K.S.A. 60-31a01 *et seq.*, obtained by a mother to protect her minor son from Bryan Ehling, an adult male. Ehling appeals claiming that the district court lacked subject matter jurisdiction to issue the order and that the district court's decision to grant the order was not based on substantial evidence. The protection from stalking (PFS) order expired on May 26, 2016, rendering the issues raised in this appeal moot. Because Ehling has not asserted a constitutional issue or other issue of public importance, and the issues raised do not affect rights vital to the parties, we exercise our discretion to dismiss this appeal as moot.

1

FACTS

On May 14, 2015, Z.N.'s mother filed an action in district court seeking a PFS order on behalf of her minor son against Ehling, an adult male. At the time the petition was filed, Z.N. was 16 years old, and although he testified that he was 38 years old, the PFS order reflects that Ehling was 44 or 45 years old. In the petition, Z.N.'s mother alleged that Ehling "surrounds himself with young boys constantly by buying expensive items for them." She also alleged that he "furnishes them with alcohol." Accordingly, she expressed concern for her son's safety.

In documents attached to the PFS petition, Z.N.'s mother specifically alleged:

> "[Z.N.] was placed in a foster home in Hutchison. Mr. Ehling told me himself that he had contacted [Z.N.] on Facebook and set up a meeting with him, which required [Z.N.] to skip school and leave school grounds to meet [Ehling]. [Z.N.] was gone 3 hrs., which resulted in him being suspended from school and kicked out of his foster home. He was sent to the Clarence Kelly Center in Topeka following this incident."

Although Z.N.'s mother told Ehling not to contact her son again, he allegedly continued to contact him through Facebook. According to the mother:

> "It was arranged for Mr. Ehling to drive to Topeka and pick [Z.N.] up. After doing so he then took [Z.N.] out of state to Colorado where they spent a week on a 'vacation.' After the 'vacation,' they returned to Winfield where Mr. Ehling helped [Z.N.] hide out for another week.
>
> [Z.N.] was caught when he was pulled over for a traffic violation while driving Mr. Ehling's car. Mr. Ehling's car is equipped with a breathalyzer which I know he has had [Z.N.] blow into to get the car to start."

On May 18, 2015, the district court issued a temporary PFS order.

The district court held a hearing on May 26, 2015. Although Ehling denied several of the allegations made by Z.N.'s mother, he admitted he met Z.N. at his school in Hutchinson. He also admitted that he and Z.N. went to Colorado with a group of people, but he denied knowing that Z.N. was in juvenile custody at that time. Ehling further admitted that the police had stopped his car in Winfield while Z.N. was driving and Ehling was in the car at the time.

Following the parties' testimony, the district court issued a final PFS order, which remained in effect until May 26, 2016. In the order, the district court found that it had both subject matter and personal jurisdiction in this case. Moreover, the district court found that Z.N.'s mother had "proved the allegations of stalking by the preponderance of the evidence as required by K.S.A. 60-31a05."

After Ehling filed his appeal, this court issued an order to Ehling to show cause why this matter should not be dismissed as moot in light of the fact that the final PFS order had expired. In response, Ehling set forth several arguments why he believed this court should allow his appeal to go forward. Thereafter, on June 23, 2016, an order was entered retaining the appeal and noting that "[t]he assigned panel will address the mootness issue."

ANALYSIS

It is undisputed that the final PFS order expired on May 26, 2016, rendering the issues presented on appeal moot. As our Supreme Court has held:

> "'The general rule is that an appellate court does not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the

3

determination will be operative, final, and conclusive.'" *Smith v. Martens*, 279 Kan. 242, 244-45, 106 P.3d 28 (2005) (quoting *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, Syl. ¶ 1, 912 P.2d 716 [1996]).

Mootness does not, however, deprive an appellate court of jurisdiction. In fact, "[a]n appellate court may sometimes elect to entertain issues which, although moot, are subjects of real controversy and include issues of statewide interest and importance." *Martens*, 279 Kan. at 244 (quoting *Duffy*, 259 Kan. 500, Syl. ¶ 2). Unlike the *Martens* case, however, whereby our Supreme Court elected to entertain a constitutional issue in a PFS case, there are no constitutional issues presented in this case nor is the resolution of the issues presented in the present appeal of particular importance to the public.

Appellate courts may also elect to "proceed to judgment whenever dismissal of an appeal adversely affects rights vital to the parties, even where its judgment will not be enforceable because of lapse of time or other changed circumstances." *Gonzalez v. State*, 11 Kan. App. 2d 70, 71, 713 P.2d 489 (1986) (dismissing an appeal from a driver's license suspension as moot because the period of suspension had expired and "no rights vital to driver or any other interested party" would be adversely affected); see also *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1047-48, 53 P.3d 1234, *rev. denied* 275 Kan. 965 (2002) (dismissing appeal from expired protection from abuse order because it did not include any of the exceptions to the general rule that the court does not decide moot questions). Here, it is undisputed that the final PFS order expired several months ago, and the record reveals no effort to renew the order.

Ehling cites *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 159 P.3d 1035 (2007), to contend that it is possible that his rights could be adversely affected by dismissal. In *Wentland*, a female professional track and field athlete obtained a protection from abuse (PFA) order against a male college professor, with whom she had previously had a romantic relationship. Approximately 2 years later, Wentland obtained a PFS order

4

against Uhlarik. She then obtained a second PFS order against Uhlarik the following year and a third PFS order against Uhlarik 2 years later.

Uhlarik appealed from the issuance of the third PFS order, challenging the sufficiency of the evidence. In affirming the district court's decision, a panel of this court found that the district court properly considered the prior PFA and PFS orders as evidence in considering the significance of Uhlarik's more recent encounters with Wentland. 37 Kan. App. 2d at 739-40. The panel stated the prior orders "establish[ed] the requisite course of conduct that would cause a reasonable person to suffer substantial emotional distress." 37 Kan. App. 2d at 738.

It is important to note that *Wentland* did not involve a mootness issue. Moreover, the prior PFA and PFS orders involved the same parties. Understandably, the panel in *Wentland* took into consideration "the history of Uhlarik's repeated harassment of Wentland" that revealed a "course of conduct that would cause a reasonable person to suffer substantial emotional distress, as found by the district court." 37 Kan. App. 2d at 738. The *Wentland* court did not conclude that prior PFS orders can be considered in any subsequent PFA or PFS case—only in subsequent cases that involve the same parties. Further, the evidence was considered for the limited purpose of determining "Uhlarik's motive in his encounters with Wentland" and not as generic evidence of prior bad acts on the part of the accused. 37 Kan. App. 2d at 740. Here, there is no reason to believe that Ehling will ever be involved in another PFS case with Z.N. In fact, it would be reasonable to assume that Ehling will voluntarily stay away from Z.N. while he is a minor.

Because Ehling is no longer subject to the PFS order, it would be purely speculation to suggest that his rights could possibly be affected at some unknown point in the future should this court elect not to resolve the issues presented in this appeal.

5

Therefore, we conclude that the issues presented in this appeal are moot, and we do not elect to entertain them under the circumstances presented.

Appeal dismissed.