NOT DESIGNATED FOR PUBLICATION

No. 120,699

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LAHLA HUNSAKER, and on behalf of C.H.,
M.T., and C.T., Minor Children,
*Appellees*,

v.

JEREMY ELBERT HARDEN,
*Appellant*.


MEMORANDUM OPINION


Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed October 11, 2019. Appeal dismissed.


*Lewanna Bell-Lloyd*, of Olathe, for appellant.


*Krystal L. Vokins*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, for appellees.


Before ATCHESON, P.J., MALONE, J., and DANIEL D. CREITZ, District Judge, assigned.


PER CURIAM: Lahla Hunsaker sought and obtained a protection from abuse order against Jeremy Harden on Hunsaker's own behalf and on behalf of her minor children, M.T., C.T., and C.H. Harden appeals, arguing that (1) the district court erred in admitting hearsay statements of the minor children and (2) the evidence was insufficient to support the district court's decision to issue the protection from abuse order. But the protective order underlying this appeal expired on June 28, 2019, so this appeal is moot because any decision by this court will have no operative effect on the parties' rights. And although there are exceptions to the mootness doctrine that could lead us to address the merits of

1

Harden's appeal under certain circumstances, Harden has failed to show that the exceptions should be applied here. Thus, we dismiss Harden's appeal as moot.

FACTS

Hunsaker has three minor children: M.T., born in 2008; C.T., born in 2009; and C.H., born in 2013. Harden is C.H.'s father, but he is not M.T.'s or C.T.'s father.

Hunsaker and Harden lived together but never married. The relationship appears to have been rocky. In 2015, Hunsaker reported to police that Harden had abused M.T. and C.T. in 2014, and the State criminally charged Harden based on those allegations. That criminal case was later dismissed for reasons neither Harden nor Hunsaker could recall. On at least two occasions, Hunsaker reported to the Kansas Department for Children and Families (DCF) that Harden was abusing C.H. DCF investigated and concluded the allegations were unsubstantiated.

In January 2018, Harden met with C.H.'s therapist, Amberlee Johns. After that meeting, Johns spoke with Hunsaker and, based on that conversation, Hunsaker believed she was in danger of physical harm from Harden. As a result, on January 22, 2018, Hunsaker filed a petition for an order seeking protection from abuse (PFA) by Harden. In her petition, Hunsaker alleged:

> "On Friday, January [19], 2018 I received a phone call from [C.H.]'s therapist at
> about [7:15] p.m. The therapist, Amberlee Johns, informed me that during her parent
> meeting with [Harden], he had told her directly multiple times that he wants to kill me.
> She told me that he said it repeatedly even after she told him that she is a mandated
> reporter. He continued talking about executing me and hiring a hitman to get rid of me.
> The therapist then stated that if I wanted to make a report about his threats, she was ready
> to share information with law enforcement, so I then contacted Lawrence Police Dept.
> and began a report with Officer Harrell, who proceeded to contact [C.H.'s] therapist,

2

Amberlee Johns, for a statement about [Harden's] threats toward me. Officer Harrell called me back about completing my statement, came to my home to pick up a written statement from me, and informed me that [Harden] had been arrested for criminal threat—he also suggested that I file for a protection order. Due to [Harden's] death threats toward me—that I believe he stated to [C.H.'s] therapist with the intent of me learning about it because he knew Amberlee Johns was a mandated reporter who would have to disclose serious threats of harm—due to his threats: I have called upon friends to stay with me and my children since Friday night, out of fear that he would come after me with the intent to physically harm and/or kill me, or my children—whom he has inflicted bodily harm on in the past. . . . I am fearful that [Harden] will never stop being abusive and threatening toward myself and my children. [Harden] was very physically abusive and intimidating when we resided together, he has strangled me and forced himself on me sexually, and he regularly destroyed property in close physical proximity to me and the kids as a way to scare us—including a TV, laptop, and kitchen table. I am extremely afraid that without some sort of legal protection in place, [Harden] will act on his threats—I do not feel safe."

Following several continuances, the district court set the final hearing on the petition for November 30, 2018. Hunsaker and Harden each appeared in person and through counsel at that hearing. Hunsaker testified that while she and Harden were living together with the children, Harden choked her and forced sex upon her even though she "said no." Hunsaker also testified about a specific incident when Harden got mad at M.T. and shattered the kitchen table while M.T. was standing in the corner crying.

At a hearing on December 28, 2018, the district court ruled from the bench and granted a final PFA order against Harden. The record does not include a transcript of this hearing. The form journal entry shows that the district court found "that the allegations of abuse are proven by a preponderance of the evidence," and the court granted an order protecting Hunsaker, C.H., M.T., and C.T. By its terms, the order was effective until June 28, 2019. Harden timely appealed. The parties agree that Hunsaker later filed a motion to extend the final PFA order for one year, but the district court denied the motion.

Harden filed a brief with this court raising two issues. First, he argues that the district court erred in admitting hearsay statements of the minor children. Second, he argues the evidence was insufficient to support the district court's decision to issue the PFA order. Hunsaker's brief argues that there was no hearsay error and that the evidence was sufficient to support the PFA order. On August 6, 2019, this court ordered the parties to show cause why this appeal should not be dismissed as moot because the PFA order has expired. Both parties timely responded to the show cause order.

## SHOULD THIS CASE BE DISMISSED AS MOOT?

"'Generally, Kansas appellate courts do not decide moot questions or render advisory opinions.'" *Mundy v. State*, 307 Kan. 280, 288, 408 P.3d 965 (2018). That being said, "[g]enerally, we do not dismiss an action as moot 'unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.'" 307 Kan. at 289.

> "We have described mootness as a jurisprudential doctrine or 'court policy' recognizing our role to ""determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such a manner that the determination will be operative, final, and conclusive."" [Citations omitted.]" 307 Kan. at 288.

Mootness is not jurisdictional, and two exceptions exist to the general rule against deciding moot issues. *State v. DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120 (2007).

> "First, where a judgment is not enforceable only because of lapse of time or other changed circumstances and where dismissal of an issue will adversely affect rights vital to one of the parties, a court may address the issue. Second, where an issue, although moot, is capable of repetition and raises concerns of public importance, a court may address the issue. [Citations omitted.]" 37 Kan. App. 2d at 605.

4

This court has consistently held that when a protection order—either a PFA or a protection from stalking (PFS) order—expires during an appeal from it, a challenge to the propriety of the order is moot, because this court cannot grant the specific relief requested—the setting aside of the order. See, e.g., *S.N. v. Ehling*, No. 114,412, 2016 WL 5867481, at *1 (Kan. App. 2016) (unpublished opinion) (noting that the PFS order had expired, "rendering the issues in this appeal moot," and dismissing the appeal as moot because none of the exceptions to the general rule against deciding moot cases applied); *McBride v. Pfannenstiel*, No. 113,691, 2016 WL 2611094, at *1-3 (Kan. App. 2016) (unpublished opinion) (same); *Allen v. Allen*, No. 104,893, 2011 WL 6382881, at *1 (Kan. App. 2011) (unpublished opinion) (collecting cases).

Similarly, in an appeal from a PFS order, the Kansas Supreme Court noted that the protection order had expired, "rendering all issues raised in this appeal moot." *Smith v. Martens*, 279 Kan. 242, 244, 106 P.3d 28 (2005). Although the *Smith* court addressed the constitutionality of the Protection from Stalking Act because, "on its face, [it] is a matter of public importance capable of repetition," it declined to consider the other issues raised in the appeal, including all "evidentiary issues." 279 Kan. at 245. The Kansas Supreme Court held that "[a]ny judgment issued by this court [on the evidentiary issue, among others] would not be enforceable because of the lapse of time, and the failure to address such issues would not affect rights vital to the parties." 279 Kan. at 245.

Here, the PFA order was effective until June 28, 2019. The parties agree that Hunsaker later filed a motion to extend the final PFA order for one year, but the district court denied the motion. So on August 6, 2019, this court directed the parties to show cause why this appeal should not be dismissed as moot. Harden's response acknowledges that the PFA order being appealed has expired, and he does not address the general trend in Kansas caselaw that would support this court's holding that the issues in his appeal are now moot. Nor does he argue that this court could grant the specific relief he requests in his brief—that the PFA order "be set aside." Thus, Harden's appeal is now moot.

That said, Harden does assert reasons why this court should retain and consider his appeal. First, Harden states: "If the District Court orders remain in place, it can cause the Appellant undue prejudice in his personal and employment life and in custody proceedings regarding his minor child." Second, he states: "If this appeal is dismissed, then a precedent would be set such that all appeals from District Court Protection Orders . . . would be dismissed. This would deny an appellant his statutory right to an appeal."

Harden appears to be arguing that dismissing the appeal as moot would affect his vital rights, one of the exceptions to the general rule on dismissing moot issues. Various panels of this court have addressed the argument that collateral consequences of PFA and PFS orders affect a party's vital rights and thus justify consideration of moot issues. In *Kaster v. Riley*, No. 117,008, 2018 WL 672106, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1595 (2018), this court noted:

> "A finding that a person is a stalker or involved in stalking behavior can have long-term consequences for that person. In any future protection from stalking cases or criminal cases incorporating such behavior, such a determination could have substantial impact on the court's perception of that person, charges that could be filed, or sentences that might be entered. As such, this matter is not moot as to [the party appealing the PFS order]."

Thus, the *Kaster* court proceeded to the merits of the arguments, despite the expiration of the PFS order at issue. 2018 WL 672106, at *4. *Kaster* is distinguishable from Harden's case on its face because it involved a PFS order. It also appears that *Kaster* adopts a minority view on whether an appeal from an expired protective order should be retained because of potential collateral consequences of the order.

In *C.M. v. McKee*, 54 Kan. App. 2d 318, 321, 398 P.3d 228 (2017), another panel of this court found that the same sort of argument was "more tenuous," explaining that "[i]t's no doubt true that many would view negatively a man found to have harassed the

11-year-old girl next door. But [the appellant] has not shown any specific way in which this would affect his legal rights." This court did address the merits of the appeal, but only because it found the issue—"how testimony of a child in a [PFS] case should be evaluated"—was of public importance and capable of repetition, the other exception to the general rule against deciding moot issues. 54 Kan. App. 2d at 321.

Similarly, in *Allen*, this court noted that at oral argument, the appellant "briefly argued that dismissal of his appeal without ruling on the merits could adversely affect his rights in the future. However, this issue was not briefed nor was any record suggesting specific consequences . . . presented. This court cannot be left to speculate as to any collateral consequences." 2011 WL 6382881, at *2. After finding that the second exception allowing consideration of moot appeals also did not apply, the *Allen* court dismissed the appeal as moot without considering the merits of the issues. 2011 WL 6382881, at *2. Similarly, this court in other cases has dismissed issues as moot when the parties failed to identify particular consequences that could arise from an expired order. See, e.g., *McBride*, 2016 WL 2611094, at *3 (noting that the record contains no evidence suggesting failure to address the appeal from an expired protective order would affect vital rights of the parties and dismissing the appeal as moot); *S.N.*, 2016 WL 5867481, at *3 (dismissing appeal as moot and noting it would be purely speculation to suggest that the appellant's rights might be affected at some unknown point in the future by failing to resolve the issues on appeal).

Here, Harden's vague assertions that the PFA order "can cause [Harden] undue prejudice in his personal and employment life" are not specific allegations of imminent collateral consequences of the order. Harden does not articulate any instances—even hypothetical ones—in which the existence of the PFA order would prevent him from asserting or protecting his vital rights. Likewise, Harden's claim that the PFA order may impact "custody proceedings regarding his minor child" has been rejected by this court. In *Kerschen v. Uwadia*, No. 119,629, 2019 WL 3978452 (Kan. App. 2019) (unpublished

opinion), this court failed to retain an appeal from an expired PFA order despite the appellant's claim that "his rights to custody of his other two children could be affected based on the finding of abuse here." 2019 WL 3978452, at *2.

We are cognizant of Harden's claim that he and others similarly situated are effectively denied appellate review of a district court's decision to issue a PFA order because such cases often become moot before the appeal process can be completed. And we would not hesitate to retain this appeal if Harden could show that dismissal will adversely affect a vital right. But Harden's assertions of undue prejudice caused by the PFA order are the sort of broad collateral consequences that this court has generally found insufficient to justify consideration of a moot issue. Thus, we conclude that Harden has failed to show that the first exception to the general rule against deciding moot issues should be applied here.

The second generally recognized exception to the mootness doctrine applies "where an issue, although moot, is capable of repetition and raises concerns of public importance." *DuMars*, 37 Kan. App. 2d at 605. This court recently applied that exception to retain an appeal from an expired PFA order in *Kerry G. v. Stacy C.*, 55 Kan. App. 2d 246, 249, 411 P.3d 1227 (2018). But Harden does not argue that this exception applies here. In any event, Harden's issues on appeal are that (1) the district court erred in admitting hearsay statements of the minor children and (2) the evidence was insufficient to support the district court's decision to issue the PFA order. These issues are not matters of public importance, even if they are capable of repetition. See *Smith*, 279 Kan. at 245 (declining to consider all "evidentiary issues" in an appeal from an expired protective order). Thus, Harden's issues on appeal do not merit consideration under the second exception to the mootness doctrine.

In sum, the protective order underlying this appeal expired on June 28, 2019, so this appeal is moot because any decision by this court will have no operative effect on the

parties' rights. Harden has failed to show that either of the recognized exceptions to the mootness doctrine apply to justify this court's consideration of the merits of his appeal.

Appeal dismissed.