NOT DESIGNATED FOR PUBLICATION

No. 122,352

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TASSADAY D. GOODMAN,
*Appellee*,

v.

JAMES E. LOUGHRIDGE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY L. WALLER, judge pro tem. Opinion filed October 30, 2020. Affirmed.

*James Loughridge*, appellant pro se.

*Shawnah K. Bennett*, of Strongpoint Law, of South Hutchinson, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Tassaday D. Goodman obtained a protection from stalking order against James E. Loughridge, her ex-husband, for acts while living in Sedgwick County. Loughridge appeals pro se, arguing the district court's findings were insufficient under the preponderance of the evidence standard to support the protection from stalking order. We disagree and affirm.

FACTS

In October 2019, Goodman petitioned for protection from stalking against Loughridge on behalf of herself and two of her children. The petition did not include the child Goodman shared with Loughridge.

Goodman's petition alleged that in September 2019, Loughridge remotely tracked their location using a tablet device, drove through their neighborhood, and contacted her financial institution requesting her personal information. Goodman claimed these acts made her fear for her safety and the safety of her children, especially because Loughridge had already "abused [her] oldest child." The district court issued a temporary order of protection from stalking against Loughridge and scheduled a final hearing.

At the final hearing, Goodman appeared with an attorney and Loughridge appeared pro se. Goodman testified Loughridge gave their child a tablet so he could communicate with the child while in her care. Four times in September 2019, Goodman saw notifications on the tablet indicating location tracking had been activated. From this, she inferred Loughridge was using the tablet to remotely track their location. Goodman said the tablet was on Loughridge's account and he refused to give her the information needed to disable the tracking app. Twice that same month, Goodman discovered security footage of a car driving through their neighborhood she was "a hundred percent" confident was Loughridge's. She said Loughridge had no reason to be in their neighborhood because he lived over an hour away and they exchanged their son for parenting time purposes at a gas station. According to Goodman, seeing Loughridge's car in their neighborhood gave her a "very uneasy feeling." Finally, Goodman said Loughridge had contacted her, their bank, and their insurance company about a delinquent car loan in both their names and requested her personal information. She said their divorce decree required her to pay off the loan and Loughridge was still a party to the loan agreement when she defaulted on the payments. Goodman told Loughridge she

2

had filed a gap insurance claim to cover the balance on the loan and asked Loughridge to "leave it alone."

Most of Loughridge's testimony conflicted with Goodman's. He said the tracking application is automatically enabled on Samsung tablet devices and its purpose is to locate a device in the event it is lost. He claimed Goodman never asked him to disable the location tracking and denied using the application to remotely track Goodman or her other two children. Loughridge testified the car depicted in the surveillance footage was not his and, on the dates the footage was taken, he was with a friend and undergoing a functional capacity exam. Loughridge acknowledged he and Goodman's car loan was through the bank they both used, and their divorce decree required Goodman to make the car payments. When Goodman defaulted on the loan, Loughridge claimed his credit score decreased and the bank froze his account. He contacted the bank and insurance company to get information on the car, not to request Goodman's personal information. Loughridge admitted to contacting Goodman about the loan being in default.

Aside from Goodman's allegations of Loughridge's stalking activities in September 2019, the parties discussed a protection from stalking order she had obtained against Loughridge in Rice County in the beginning of 2017 while their divorce was pending. Their testimony suggested the 2017 order centered around allegations Loughridge had physically abused Goodman's oldest child. Loughridge claimed these acts were later found to be unsubstantiated. The order was not admitted into evidence.

The district court granted Goodman's petition on the record, and in its written journal entry found Goodman had proved her allegation of stalking by a preponderance of the evidence.

ANALYSIS

To begin, we note the district court's journal entry reflects it found Goodman had proved stalking by a preponderance of the evidence and it issued the protective order.

The record reflects Loughridge did not object to the district court's findings at the final hearing, and he fails to challenge the adequacy of the district court's factual findings on appeal. Generally, when a district court makes inadequate findings and the party fails to object to those findings, we presume the district court made the findings necessary to support its conclusion. However, we need not decide whether this presumption applies to the district court's findings because Loughridge has abandoned the issue by failing to brief it. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (points not raised deemed abandoned).

As for the first issue Loughridge raises, he fails to establish entitlement to relief. For one, he does not cite a standard of review as required under Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34). Generally, litigants who ignore Rule 6.02(a)(5) abandon their argument. See, e.g., *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 1097, 442 P.3d 1054 (2019), *aff'd* 312 Kan. ___, 2020 WL 5996446 (Kan. 2020). Procedural rules are just as applicable to pro se litigants as to litigants represented by counsel. See *Guillory v. State,* 285 Kan. 223, 229, 170 P.3d 403 (2007). On the merits, Loughridge narrowly argues there was no evidence presented to show his contacts with Goodman and their financial institution about the car loan met the statutory criteria of serving "no legitimate purpose." See K.S.A. 2019 Supp. 60-31a02(d)(1). But even if we were to reach the substance of this claim, his argument fails.

Generally, a challenge to the sufficiency of the evidence requires us to review the district court's factual findings for support by substantial competent evidence and review its legal conclusions de novo. In doing this review, the evidence is viewed "in the light

most favorable to the prevailing party." *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007). In this case, though the district court's factual findings were not specific, Loughridge did not object to them below, nor does he challenge them on appeal. Loughridge fails to show the evidence was insufficient to support the district court's ruling.

The Protection from Stalking, Sexual Assault or Human Trafficking Act, K.S.A. 2019 Supp. 60-31a01 et seq., requires plaintiffs to prove an allegation of stalking by a preponderance of the evidence. K.S.A. 2019 Supp. 60-31a05(a). "'Stalking' means an intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 2019 Supp. 60-31a02(d). Harassment is a "knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." K.S.A. 2019 Supp. 60-31a02(d)(1). A course of conduct is "conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress." K.S.A. 2019 Supp. 60-31a02(d)(2).

This statute must be read as a whole, incorporating the definitions in subsections (d)(1) and (2). See *Smith v. Martens*, 279 Kan. 242, 251, 106 P.3d 28 (2005). In doing so, the two or more acts causing a reasonable person to suffer substantial emotional distress must serve no legitimate purpose. Without this limitation, acts with a legitimate purpose, however distressing—such as the sending of debt collection letters—could rise to the level of harassment.

Here, even if Loughridge's specific argument about why he contacted the bank and Goodman is correct, he is still not entitled to relief because Goodman's testimony reflected other acts by Loughridge that brought her alarm and torment.

Goodman presented evidence of more than two other separate acts as required to establish a "course of conduct" under K.S.A. 2019 Supp. 60-31a02(d)(2). In *Herbig v. Szemere*, No. 113,632, 2016 WL 1298025, at *3 (Kan. App. 2016) (unpublished opinion), the panel found insufficient evidence of stalking because "[t]here was no evidence of any act, other than the one death threat," directed at the plaintiffs. Here, Goodman presented evidence of six other separate acts to establish a course of conduct. Loughridge fails to address these other acts in his brief, and, when considered as a whole, they are sufficient to establish a course of conduct to establish intentional harassment. Because Loughridge does not challenge the other evidence Goodman presented, he cannot show the district court's order was unsupported by a preponderance of the evidence.

Loughridge's second issue on appeal is difficult to discern. He takes issue with the previous protection from stalking order Goodman obtained against him being brought up in this hearing. But Loughridge provides no legal argument or authority for why the testimony on the prior order was improper, so his allegations are too vague to resolve on the merits. Nor does he provide a standard of review. See Rule 6.02(a)(5). Because Loughridge has insufficiently briefed this issue, we find it is abandoned. See *In re Marriage of Williams*, 307 Kan. at 977.

The district court did not err in granting the protection from stalking order against Loughridge.

Affirmed.